# CHARLESTON.

S. C. BISSETT v. TOWN OF LITTLETON *et al.*

Submitted September 22, 1920.    Decided October 5, 1920.

MUNICIPAL CORPORATIONS—*Municipality Without Power to Regulate Hours of Opening and Closing Pool Rooms as Against State Licensees.*

A municipality chartered and exercising authority under and by virtue of chapter 47 of the Code, is given no specific or implied authority, by section 28 thereof, or otherwise, and has no inherent power, to regulate by ordinance the time of

opening and closing places where billiard and pool tables
are kept for public use and resort, nor to impose penalties
upon persons for violations thereof to whom state licenses
have been issued pursuant to the several provisions of chap-
ter 32 of the Code, as amended by chapter 102, Acts of 1919.

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Wetzel County.

Suit by S. C. Bissett against the Town of Littleton and others.
From a final decree dissolving a preliminary injunction and dis-
missing the plaintiff's bill, he appeals.

*Reversed, injunction reinstated and perpetuated.*

*M. H. Willis,* for appellant.
*J. D. Parriott,* for appellees.

MILLER, JUDGE:

The final decree appealed from dissolved the preliminary in-
junction and dismissed plaintiff's bill, and plaintiff appeals.
The purpose of the bill was to enjoin defendant, its mayor and
common council from enforcing or attempting to enforce against
plaintiff by prosecution or otherwise an ordinance adopted by the
council on July 21, 1919, purporting to regulate the operation
of pool rooms in said town, section 2 of which is as follows:
"Any place of business where such tables are kept for public use
and resort shall be and remain open for business only between
the hours of 7 o'clock A. M. and 8:30 o'clock P. M. each day
in the week except Saturday and Sunday; but on Saturday such
place may remain open until 10 o'clock P. M., and on Sunday
shall remain closed the entire day." Section 4 imposes quite
drastic penalties upon those found guilty of the violation of the
ordinance, and with which the bill alleges and the record shows
plaintiff was threatened.

Prior to the commencement of the license year beginning July
1, 1919, and the passage of the ordinance complained of, plain-
tiff had applied for and obtained from the clerk of the county
court of Wetzel County a license to operate a pool room in
said town for the ensuing license year, and had paid the license
tax thereon. He also subsequently obtained from the town au-

thorities a license for the same purpose and paid the license tax imposed thereon.    He commenced business July 1, 1919.

The proposition relied on to reverse the decree and to obtain perpetuation of the injunction is that so much at least of the ordinance as purports to regulate the opening and closing time of places of business where such pool tables are operated, is void and unenforceable, no such power or authority being vested in town or council by chapter 47 of the Code, under which the municipality was incorporated.

In support of his contention counsel for plaintiff refers us first to chapter 102, Acts 1919, amending and re-enacting certain sections of chapter 32 of the Code 1916, particularly sections 1 and 10 thereof.    Section 1, as amended by said act, as did section 1 of chapter 32 of the Code, inhibits the keeping for public use or resort a bowling alley, pool table, billiard table, etc., without a state license therefor.    As amended by the act of 1919, the businesses upon which license taxes may be imposed are very much enlarged and extended.    Prior to the amendment of said section, such licenses were issuable only when authorized by the county court; now by the amendment thereof they are issued by the county clerk upon proper application filed with him, but revokable by the county court for good cause shown upon petition and notice to the licensee, and an opportunity to be heard, as provided by section 34 as amended.    And prior to the amendment of section 10 by the act of 1919, when the business was to be carried on in an incorporated city, town or village, such license was permitted only when authorized under the charter of the city, town or village by the council or license court thereof, as well as by the county court.    So we see these amendments worked a very decided and important change in the law respecting licenses.

It is conceded that with this state license so obtained, plaintiff has absolute right to carry on his business in the town of Littleton.    But on behalf of the defendants we are referred first to section 33 of chapter 47, providing that: "Whenever anything for which a State license is required, is to be done within such city, town or village, the council may require a city, town or village license therefor, and may impose a tax thereon for the use

of the city, town or village." Here is authority for imposing a license tax on such businesses, but not to regulate or tax the same out of business, unless this power has been taken away or modified by the recent amendments to said chapter 32. As the plaintiff did not deny the power of the Town of Littleton to impose the tax, but applied for and obtained a municipal license and paid the tax imposed, the same as that imposed by the state, we need not further consider this question, for no point is made thereon.

For authority to regulate in the manner provided by the ordinance we are next referred to section 28, chapter 47, as follows: "The council of such city, town or village shall have plenary power and authority therein * * * to prevent injury and annoyance to the public or individuals from anything dangerous, offensive or unwholesome; * * * to abate or cause to be abated anything which, in the opinion of a majority of the whole council, shall be a nuisance; * * * to protect the persons and property of the citizens of such city, town or village, and to preserve peace and good order therein." The police power of the state is also invoked as being inherent in the municipality. The police power of the state is conceded, but a municipality in the exercise thereof must always find the power of the state specifically delegated, or necessarily implied from the power specifically granted. *Judy* v. *Lashley,* 50 W. Va. 628; *Improvement Company* v. *City of Bluefield,* 69 W. Va. 1, 6; *State* v. *Porter,* 84 W. Va. 398, 99 S. E. 508. But can the power to regulate be extracted from the authority conferred by said section 28? "To prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome," is the first classification of the statute. It is not believed that the power to regulate the business of operating pool tables can by any rule of construction be referred to this power.

The next is, "to abate or cause to be abated anything which, in the opinion of a majority of the whole council, shall be a nuisance." Can it be said that operating a pool table, a business for which a license is authorized as a revenue measure, is or could be a nuisance, or within reason declared so by the council? Pool and billiard tables are now installed and operated in Y. M. C. A.

buildings, in social clubs, and in the private homes of many of the people, and they are sometimes installed in the social rooms of the churches. Used as places of recreation and amusement, pool rooms are not nuisances. They may become nuisances when kept and resorted to for gambling, but they are not *per se* so. Other statutes of the state against gambling, against allowing pool rooms to be visited by persons under eighteen years of age, and the like, must have been regarded by the legislature as sufficiently regulatory of the business of operating pool and billiard tables for public use. In *Morley* v. *Godfrey,* 54 W. Va. 54, we held that the common council of a municipality has no power to suppress gambling. Section 28 of chapter 47, prescribing the power of the council prior to that decision contained no such authority, but by the amendment of this section, chapter 53, Acts 1905, this power was expressly conferred. Such, however, is not the scope or purpose of the ordinance in question, and the power claimed is not referred to that section of the Code. Authority to suppress gambling will not warrant an ordinance forbidding the keeping of billiard and pool tables for hire. *Breninger* v. *Town of Belvidere,* 44 N. J. L. 350. Establishments where billiard and pool tables are kept are more properly to be regarded as places of amusement than gambling establishments. 2 Dillon on Municipal Corporations, (5th ed.), sec. 731, and cases cited. The third and last of the powers conferred, and relied on is, "to protect the person and property of the citizens of such city, town or village, and to preserve peace and good order therein." How can it be said that the power to regulate the hours of operating pool and billiard tables is lodged in the council by this provision? Certainly it is not so expressed in the language. General statutes to protect property and for preserving peace and good order fully cover these subjects, and there may be ordinances of the municipality for that purpose, but we can not deduce from the language of section 28 any power to regulate the time of opening and closing pool rooms. If it be said that the business of pool rooms has a tendency to bring about breaches of the peace, so it was said in *Judy* v. *Lashley, supra,* with reference to carrying pistols; but as there held, so we hold in this case, the police power of the state

in relation thereto must be specifically conferred before it can be exercised by a municipality. The case of *City of Tarkio* v. *Cook,* 120 Mo. App. 1, cited and relied on by defendants' counsel, involved the validity of an ordinance regulating the time of closing billiard halls. In that case the ordinance was held valid, not alone under the power to preserve peace and good order, but because the charter specifically authorized the council to regulate the business of operating billiard tables, etc. A municipality can not by ordinance make any law in violation of a statute. *Block* v. *Crockett,* 61 W. Va. 421. The Tarkio case, *supra,* institutes a distinction between useful businesses and businesses, though lawful, for amusement, in the application of the power of regulation, but as that case held, interference with the liberties of the people must find lodgment in specific authority. As said in 28 Cyc. 711, even express authority for such ordinances must be strictly construed in passing on their validity. In all the cases cited by counsel for defendants in support of the ordinance we find the power exercised was specifically conferred by the charter or by some general law. In no instance was municipal legislation sustained by the courts unless the power was so given. Some of the cases cited are: *Goytino* v. *McAleer,* 4 Cal. App. 655; and *Tarkio* v. *Cook, supra.* There is no inherent power in a municipality to enact police regulations; and, as already said, a municipality can exercise only such police powers as are fairly included in the grant of power by its charter or some general law. 19 R. C. L. 800.

Conceding the power to regulate, it is insisted the ordinance in question would be an unreasonable regulation of a lawful business. It is said, and the evidence tends to show, that the time when the ordinance requires the closing of pool rooms, is the time when many who would resort thither are released from their daily work, and that plaintiff could not succeed and pay his license taxes under such regulations; that he would be bound to quit the business because his patronage does not fairly begin until business at other places ends. There is much force in this argument of unreasonableness, but we need not go into that question, because we find the charter does not warrant the regulation imposed by the ordinance.

Our conclusion is to reverse the decree below, re-instate the injunction and make the same perpetual.

*Reversed; injunction reinstated and perpetuated.*