# CHARLESTON.

NICK HOUVOURAS *et als. v.* CITY OF HUNTINGTON.

Submitted February 7, 1922.    Decided February 14, 1922.

1. MUNICIPAL CORPORATIONS—*Ordinance Binding on Municipal Authorities.*

   An ordinance enacted by the municipal authorities of a city and binding upon those persons coming within its scope is also binding upon such municipal authorities.    (p. 250).

2. CONSTITUTIONAL LAW—LICENSES—*Municipal Authorities May Not Require Conditions in Excess of Those Provided by Ordinance for Granting Restaurant License.*

   Under an ordinance for licensing restaurants which merely provides that every such license shall specify the house where the restaurant is to be kept, but specifies no qualification or condition save that of payment of license fees and execution of the bond required, upon application for such license the municipal authorities can not, so long as the ordinance stands, require additional qualifications or conditions either as to the person who applies, or as to the place where the restaurant is to be conducted.    (p. 250).

3. MANDAMUS—*Municipal Authorities May be Compelled to Issue Restaurant License.*

   Under such an ordinance, where applicants ask for a license to conduct a restaurant, tender the necessary license

fees, offer to execute the bond required, and specify the place where the restaurant is to be conducted, it is the duty of the municipal authorities to issue such license, and upon refusal they may be compelled by mandamus to do so. (p. 251).

4. LICENSES—*City Must Adopt Reasonable Ordinance, and May Not Arbitrarily Refuse Licenses.*

Where a city by its charter is given "the sole and exclusive right to grant, refuse or revoke any and all licenses for the carrying on of any business within said city on which the state exacts a license tax," and to carry into effect the powers granted it is also authorized to adopt all needful orders, rules and ordinances not contrary to the laws and constitution of the state, it is an implied condition of the broad power to grant, revoke and refuse licenses that the city adopt reasonable ordinances under which licenses will be granted; and if the city, in the absence of such ordinances, undertakes to grant licenses for restaurants, it is the duty of the authorities of the city to treat alike all persons who apply for such licenses, and they can not arbitrarily refuse any such licenses at their will and pleasure. (p. 251).

Certified Questions from Circuit Court, Cabell County.

Application by Nick Houvouras and others for a writ of mandamus against the City of Huntington, to require the defendant to issue a restaurant license. An alternative writ was issued, and the respondent's demurrer thereto sustained, whereupon an amended petition was filed, and an alternative writ issued, to which respondent demurred, and the demurrer was sustained, and the questions arising upon the demurrers were certified for review.

*Reversed, and demurrer overruled.*

*J. H. Strickling,* for plaintiffs.
*Deegan & Hall,* for defendant.

MEREDITH, JUDGE:

The petitioners applied to the circuit court of Cabell County for a writ of mandamus to require the city of Huntington to issue them a license to conduct a restaurant at No. 840 Fourth Avenue in said city. An alternative writ was issued and the respondent's demurrer thereto was sustained. Thereupon an amended petition was filed and an alternative

writ issued thereon, to which respondent appeared and demurred, and the demurrer was sustained. The questions arising upon the demrrers were certified to this court for review.

As the alternative writ issued on the original petition has been disposed of and that writ has been abandoned, we do not deem it necessary to discuss the sufficiency thereof, but will confine our review to the questions arising upon demurrer to the writ issued on the amended petition.

The second writ shows that the petitioners are citizens, taxpayers and property owners in Cabell county, and are now and have been for many years past engaged in the confectionery business under the firm name of Huntington Candy Company at No. 840 Fourth Avenue in the city of Huntington; that in the conduct of their business they make candy and sell at retail candy, soda-water, soft drinks, ice-cream and light lunches, and that by reason of the fact that they sell sandwiches or light lunches, they have been advised and believe it is necessary for them to take out a license for a restaurant.

That for the tax year 1920-21 they obtained such state licenses and carried on such kinds of business at the place named during that period.

In July, 1921, they obtained from the State Tax Commissioner licenses to conduct a restaurant and also to sell soft drinks. In June, 1921, they applied to the Board of Commissioners of the city of Huntington for license to conduct a restaurant and to sell soft drinks at the same place, and offered to execute such bond provided for by statute as might be required by the Board. On July 5, 1921, the Board granted petitioners a license to sell soft drinks, but without any notice to petitioners or without assigning any cause, refused them a license to conduct a restaurant at this place of business, the only notation appearing on the records of their meeting being "refused for good cause," and though petitioners have repeatedly tried to ascertain such cause, all their efforts have been fruitless.

The writ further shows that competition in the business of retail confectioner in the city of Huntington is sharp and par-

.ticularly so in the sale of soft drinks, ice-cream and light lunches, and that within four blocks of petitioners' place of business there are as many as a half dozen other persons or firms who sell soft drinks, ice-cream and light lunches, and have been duly licensed by the city to conduct restaurants as required by the city charter, and that if petitioners can not sell sandwiches or light lunches they can not compete with their competitors and will suffer great financial loss.

That the refusal to grant petitioners a license to conduct a restaurant was arbitrary and without just cause; that the Board of Commissioners of the city claim the right to refuse such license to petitioners under section 6 of the city charter, defining the powers of said Board, which gives the Board "the sole and exclusive right to grant, refuse or revoke any and all licenses for the carrying on of any business within said city, on which the state exacts a license tax"; that said city has adopted certain ordinances respecting the granting of licenses; we quote the only ones deemed pertinent on this inquiry, namely:

Section 102. "Every license issued as aforesaid, if it be to authorize the keeping of a hotel or tavern, eating house or restaurant, or bowling alley, billiard table or bagatelle, or any table of like kind, taxi-cab or any place of like kind, shall specify the house in which it is to be kept or carried on; and to keep or carry on the same at a different place shall be deemed a violation of this ordinance. Other licenses shall be deemed co-extensive with the city."

Section 103. "A license mentioned in section one of this ordinance shall be issued only when authorized by· the Board of Commissioners of the city of Huntington, except as herein otherwise provided."

Section 117. "When a license is necessary to be had for doing anything within the corporate limits of said city, and no other mode is prescribed for obtaining the same, the person wishing to obtain such license shall make application to the City Clerk therefor, who shall give such applicant a cer-
.tificate to the treasurer of said city, specifying the amount of money to be paid, and the person or persons named therein, shall pay to the said city treasurer the said sum of

money and procure from the treasurer duplicate receipts for the same, one of which receipts shall be returned to the city clerk, who shall, upon presentation thereof, make out and deliver to said applicant a license, signed by the Mayor and countersigned by the said clerk, setting forth therein for what purpose the same is granted and the time it is to continue, for the issuance of which said license the said city clerk shall be paid by the person receiving the same the sum of fifty cents.''

It also appears from said writ that no other ordinances respecting the granting or refusing of licenses have been passed.

It is averred in the writ that to deny petitioners such license without a hearing, and without assigning any cause, is an arbitrary and unlawful and unjustifiable exercise of power and is an illegal discrimination against petitioners and in direct violation of section 1 of the Bill of Rights of the State Constitution, and of the Fourteenth Amendment to the Constitution of the United States.

It will be observed that section 102 of the city ordinances above quoted is the only ordinance, if it can be called an ordinance, that provides for granting a license to conduct a restaurant. The only qualification therein required is that it shall specify the house in which the business is to be carried on. While this is enacted by the city as an ordinance, it may well be doubted whether in a proper sense it is an ordinance at all. An ordinance is a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform and permanent rules of conduct relating to the corporate affairs of the municipality. McQuillan, Municipal Corporations, Sec. 634. This so-called ordinance is general and uniform in its terms, and so far as the letter is concerned, operates on all alike. It prescribes but one rule,— the house where the restaurant is to be conducted must be specified. No qualifications as to the character of the applicant, kind of building, or rules for the conduct of the business are specified. It matters not whether the applicants desire to sell light lunches in connection with their confectionery, to conduct a cafeteria or a general restaurant business. So far as the ordinance speaks, it applies to all kinds of restaurants.

Can the city, after it has enacted the ordinance and after the applicants have complied with its requirements, add other conditions before granting the license? We think not. So long as the ordinance stands as a part of the municipal law it is binding upon the authorities of the city just the same as it is binding upon the persons residing in the city. The city has said in effect that any applicant who will pay the prescribed fees may have a license to conduct a restaurant in any house he may specify in his application. It has not fixed any other rule to guide the applicant. There is no restriction or limitation. It applies to all, it is an invitation to all. The authorities reserved no discretion to themselves. They can not arbitrarily refuse.

This subject is fully discussed by Judge WILLIAMS in *Lynch v. Town of North View,* 73 W. Va. 609, 81 S. E. 833. In that case the town council was granted plenary power over the streets of the town, and to keep them free from obstructions. Pursuant to the authority granted, the council passed an ordinance making it unlawful for any person to dig out or excavate in any street, alley or road, or to remove any soil or other thing from any street, alley or road for the setting of telegraph or telephone or other poles or posts, or laying gas mains, or for doing any other thing without the consent of the council entered of record. The court held the ordinance to be void, saying: ''To make valid a city ordinance placing restrictions upon lawful conduct or the lawful use of property, it must specify the use and conditions to be observed in such conduct, or business, and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions. It should not admit of an opportunity for the exercise of an arbitrary discrimination by the municipal authorities between citizens similarly situated. ''Notwithstanding express power may exist to enact, the ordinance must provide a uniform rule of action; it must contain permanent legal provisions, operating generally and impartially, for its enforcement can not be left to the will or unregulated discretion of the municipal authorities, or any officer of the corporation.' ''

But it is argued that the city by its charter is granted the

sole and exclusive power to grant, refuse or revoke licenses. Sole and exclusive power, yes. Neither the county or state licensing authorities have any control, but it can not be thought for a moment that the city authorities were granted unbridled power to grant, refuse or revoke licenses at their whim and pleasure. The charter powers are not self-executing. To carry into effect the powers granted, the Board of Commissioners is further authorized to adopt all needful orders, rules and ordinances, not contrary to the laws and Constitution of the state. It was an implied condition of the broad power to grant, refuse or revoke licenses, that the Board would adopt reasonable ordinances under which licenses would be granted; it can hardly be contended that the Board under such grant of power and in the absence of any ordinance respecting licenses can refuse to grant licenses altogether, yet the argument of respondent's counsel carried to its final conclusion means just that. If the city had adopted no ordinance respecting the licensing of restaurants, notwithstanding the broad charter powers, yet, if it undertook to grant licenses at all, it would be its duty to grant licenses for that purpose to all who might apply and complied with the general law as to payment of fees and naming of the place where the business was to be conducted. If this were not so the city might refuse to adopt any ordinances and thereby arrogate to themselves authority to say to what particular persons licenses should be granted or in what particular places the licensed business should be conducted, and that without regard to the character of the person or place. It would give the authorities the right to dispense or refuse licenses at their pleasure. Such was not contemplated by the statute, and such is not its meaning. Such meaning would render the statute void. 19 R. C. L. 813; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Hagerstown* v. *B. & O. R. R. Co.,* 107 Md. 178, 68 Atl. 490, 126 A. S. R. 382.

The business of conducting a restaurant is a lawful business, and in the absence of statute any one has the right to engage in it, and one can not be prevented from engaging in such business if one meets the requirements of the law. The petitioners have shown that they have complied with all legal

requirements. It was the duty of the city to grant them a license, under the showing made. We think the court erred in sustaining the demurrer to the alternative writ issued on the amended petition and therefore overrule the demurrer and reverse the ruling, and so certify to the circuit court.

*Reversed and demurrer overruled.*