# CHARLESTON.

CLARKE HARDMAN *v.* TOWN OF GLENVILLE

(No. 5785)

Submitted September 1, 1926. Decided September 7, 1926.

LICENSES—*Petition of Citizens and Representation of President of Normal School that Parents of Students Complained that Sons Were Spending too Much Time and Money in Pool Rooms, Without Other Showing, Will Not Justify Denial of License to Operate Pool Room (Code, c. 47, §28).*

Neither the petition of citizens, not presenting justifying facts, nor the representation of the president of a state normal school located within the municipality, and a member of the council, that parents of some of the boys over eighteen years of age attending said school had complained that their sons were spending too much time and money in pool rooms and there associating with all classes of boys and encountering therein bad or vulgar language, and threatening to withdraw their patronage from the school, will without other showing, as that the applicant is a person of bad character, and therefore unfit, or has been conducting his business in an unlawful manner, justify the council in denying to him a license or permit to operate a pool room.

(Licenses, 37 C. J. § 98.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

WOODS, JUDGE, Dissents.

Original proceeding by the State, on the relation of Clarke Hardman, for mandamus to be directed to the Common Council of the Town of Glenville.

*Writ awarded.*

*Gordon H. Brown,* for relator.
*R. F. Kidd,* for respondent.

MILLER, JUDGE:

Petitioner prays for a peremptory writ of mandamus requiring the council of the Town of Glenville to issue to him a license to operate a pool room in said town for the license year ending June 30, 1927, a privilege which he had enjoyed under a license issued for the previous year, but which, the petition and alternative writ allege, respondents on his application had arbitrarily and unjustly denied him for the ensuing year.

Petitioner alleges that during the previous year he had purchased from one Brannon the pool rooom in question and had operated the same from February to the end of the license year, when he applied for a new license for the current year, which was denied him as alleged; that he had leased the pool room for two years, and thereby incurred the liability to pay therefor fifty dollars per month during the term of the lease; that said room was unfitted for any other business, and unless permitted to carry on the business for which he had leased the property, he would sustain great loss of rent and profit in the business. He avers that he and those from whom he purchased the property had at all times conducted the business lawfully; had never violated any law or ordinance respecting the conduct of such business; but on the contrary had operated the property in a lawful and proper manner; and that the withholding of the permit would work a great hardship upon him and result in irreparable loss and injury, not justified by the facts, and unwarranted by law.

Respondents first plead the provisions of section 28 of chapter 47 of the Code, conferring upon them, they say, plenary powers, among other things, "to license, or prohibit, the operation of pool and billiard rooms and maintaining for hire of pool and billiard tables," wherefore, they aver, they have discretionary power to grant or withhold such licenses, and that none such have been granted for the fiscal year beginning July 1, 1926, and that a similar license had been also denied to one J. W. Lorentz. They further say that in this action they were governed, first, by their sound judgment and due and reasonable discretion, and with the firm belief that the

conducting of pool rooms in their municipality would not advance the moral, social or educational interests of the residents of the municipality, but would be detrimental thereto; moreover, that the moral force of said town was earnest and active in its opposition to the granting of such licenses, evidenced by a petition filed with respondents before their action was taken, praying that they should refuse licenses for the operation of pool rooms and billiard tables within the corporate limits of said town, which was signed by all the resident ministers and several members of the different churches and other prominent citizens, and by a large number of residents of said municipality, who had personally requested respondents to refuse to grant such licenses, which petition they exhibited with their return.

And as a further and additional ground for their action, respondents answered that there is located within said municipality a State Normal School, having a large attendance of boys and girls from all the central counties of the state, some thirty in number, and that the president of said institution, who was also one of the members of said council, stated at the meeting at which said action was taken, that many of the parents who send their boys over eighteen years of age to said school, that being the age limit for boys to play at pool or loiter in such pool rooms, had seriously complained about the operation of such pool rooms in said town, representing that their boys spent too much time and money therein, and were frequently thrown in the company of and associated with all kinds and classes of boys and young men, and that the language used therein was not chaste, pure and refined, but on many occasion was vulgar and profane, and that unless their boys could be free from such influences they would cease to patronize the school; wherefore respondents say that the operation of such pool rooms within said municipality is hurtful and detrimental to said Normal School.

We think it must be regarded as settled law of this state that the statute thus invoked does not confer upon municipal authorities arbitrary and uncontrolled power to the extent claimed in this case; that the discretion conferred to grant or refuse licenses to operate pool and billiard tables must have

some reasonable foundation in fact, justifying its exercise. *State ex rel. Hamrick* v. *County Court,* 92 W. Va. 222; *State ex rel. Hoffman* v. *Town of Clendenin,* Id. 618; *Bissett* v. *Town of Littleton,* 87 W. Va. 127.

By these and other authorities the business of operating pool rooms properly conducted is a lawful business, not malum prohibitum, nor nuisances per se; and the power to refuse licenses cannot be arbitrarily exercised. The reasonings advanced for the several holdings of the cases cited are all that we need to advance for the conclusion reached in this case, and we will not presume to repeat them here.

In the light of these decisions we must determine whether the facts set up in the return warranted respondents' action in denying petitioner a license. First, as to the petition of the citizens and taxpayers of the "Town of Glenville and suburbs." The petition purports to be signed by twenty-eight persons, six of them ministers, nine of them women, and the remaining petitioners appear to be male persons. How many of them reside inside and how many outside of the municipality does not appear. But not a single fact is charged against the character of the applicant and relator, showing his unfitness for the business; nor is anything represented against him as to his previous conduct of the business, that he ever violated the law or otherwise showed himself unworthy to enjoy the privileges theretofore conferred upon him by the municipal authorities. The petitioners are all no doubt honorable and well meaning people. In *Bissett* v. *Littleton, supra,* we alluded to the uses made of pool and billiard tables in clubs, Y. M. C. A. buildings, churches, and in private homes, engaged in the moral uplift of the people, young and old, of their communities. They are no doubt properly employed there, as a source of innocent amusement and physical recreation, with no detriment to the moral or spiritual welfare of the patrons thereof. True, improper uses may be, and no doubt often are, made of these instrumentalities, but this fact should not condemn them for proper uses; and no statute or ordinance relied on attempts to do so. There is no suggestion in this case, as in the *Hamrick* case, that the applicant had ever conducted anything but the most orderly house, or that

he had violated any statute or moral precept therein. Such a petition, therefore, if it had been signed by the whole community, instead of a mere handful of the citizens, would not justify the denial to the relator of the privilege to exercise a lawful right and to conduct his business in a lawful and proper manner.

The more potent influence operating upon the minds of respondents and inducing their action, no doubt, was the representation of the president of the State Normal School, one of their number, that many of the parents of the boys over eighteen years of age were seriously complaining that these boys spent too much time and money in the pool rooms, and there fell in company with all classes of boys and young men, and encountered their bad, unchaste and unrefined language, wherefore they threatened to withdraw their patronage from the school. We interpret this as a mere generalization of what these boys might do. Not a single instance of such complaint is given; nor is it said that the applicant conducted, would conduct, or ever had conducted his business in such a way as to justify the apprehension or complaints of such parents. Besides, could not parental or school authority be exercised so as to prevent the expenditure of too much money or the coming in contact with improper and dissolute persons? Is there any more reason on these grounds for withholding from petitioner a license to conduct his business, than there would be to refuse to license soda fountains, cigar stores, restaurants, ball parks, merry-go-rounds, taxi cab stands, and the like? It is not the inherent character of any of these businesses which would justify the denial of the right to conduct them, but the manner of their unlawful conduct which would render them nuisances and justify municipal or other public authorities in denying the right. The legislature might perhaps; but it has never yet declared pool rooms and billiard rooms nuisances per se, and prohibited or authorized their prohibition. On the contrary, recognizing their lawfulness, it has imposed license taxes upon them for state and municipal revenues, out of which to maintain the state government, and perhaps for the support of public schools.

Upon all which consideration we are disposed to award the peremptory writ prayed for in this case.

*Writ awarded.*