Upon the petition of H. L. Flanagan, the circuit court awarded a peremptory writ of mandamus commanding Dr. Glen Moomau, mayor, L. L. Cooperider, recorder, and W. D. Trent, Eston Harmon, Fred Harmon, Wade Rexrode and Wilson Deadrick, council, of the town of Petersburg, Grant county, to issue to the petitioner a pool room license.
The answer and return of the respondents to the petition and alternative writ of mandamus, denied that Flanagan was a fit person to operate a pool room, and averred an established policy of the town, in the interest of public morals, to refuse *Page 112 
all applications for pool room licenses. As evidence of unfitness it is alleged and proved that Flanagan is delinquent in the payment of taxes to the town and has been convicted upon his own confession before a justice of assault and battery. Petitioner contends (1) that these facts are insufficient to show that he is not a fit person to operate a pool room, and (2) that (according to the decision in State ex rel. Hardman v.Town of Glenville, 102 W. Va. 94) a municipality may not, in the interest of public morals, maintain the policy of rejecting all applications for pool room licenses.
Chapter 102, Acts 1919 (amending chapter 32, Code 1916) conferred upon the clerk of the county court authority to issue pool room licenses without specifically providing for the issuance of municipal license where the business is to be conducted in a city, town or village. Construing the amendment, in Bissett v. Town of Littleton, 87 W. Va. 137, the Court said: "Prior to the amendment * * * such licenses were issuable only when authorized by the county court; now * * * they are issued by the county clerk upon proper application filed with him, but revokable by the county court for good cause shown upon petition and notice to the licensee, and an opportunity to be heard * * *. And prior to the amendment, when the business was to be carried on in an incorporated city, town or village, such license was permitted only when authorized * * * by the council or license court thereof, as well as by the county court."State ex rel. Kelley v. City of Grafton, 87 W. Va. 191, held: "Since the enactment of chapter 102, Acts 1919, the concurrent discretionary power which the law theretofore had conferred upon a municipal corporation in the granting of licenses for acts or business to be done or carried on within its jurisdiction no longer remains, and, though the city council or other governing body may still require the state licensee to obtain a municipal permit or license, and pay a fee therefor, as a condition of the lawful right to do the act or carry on such business, yet it no longer possesses authority to refuse to grant such license upon the proper application therefor and tender of the requisite fee." By chapter 143, Acts 1921, the council of a city, town or village is given "plenary power and authority therein * * * to *Page 113 
license or prohibit the operation of pool or billiard rooms, and maintaining for hire of pool or billiard tables, and in event any such business is licensed, to make and enforce reasonable ordinances regulating the same. " Sections 35 and 35a, chapter 109 of said Acts, read together, also confer upon the municipal governing body exclusive jurisdiction in the granting of pool room licenses where the business is to be conducted in a city, town or village. In State ex rel. Hamrick
v. County Court et al., 92 W. Va. 222, which construes sections 35 and 35a, chapter 105 of said Acts (without considering chapter 143 thereof) it is stated: "Section 34, chapter 32, Code 1918, gave the county or license court who authorized any licenses, authority, for good cause shown, to revoke the same upon the petition in writing of any inhabitant of the county or town; but provided that the licensee should first have reasonable notice thereof and the privilege of being heard in person or by counsel. As amended by chapter 102, Acts 1919, this statute limits the authority of revocation to the county court; but section 35 of said chapter 32, as amended by chapter 109, Acts 1921, gives cities and towns exclusive power to grant licenses, to be exercised therein, and further provides that they shall have all the rights and powers thus granted to county courts, which would necessarily include the power to revoke as well as to grant licenses. We are not here dealing with the right of revocation, but with the power of the respondents to withhold licenses to operate pool tables. The return of the county court, in addition to what is answered by the mayor and council of said town, is that their refusal to grant a license to petitioner was based on the fact that under the provisions of chapter 109 of the Acts of 1921, they were without authority or jurisdiction in the premises, without the favorable action of the council of said town, inasmuch as the applicant desired to conduct his business within the corporate limits of said municipality. Section 35a of said chapter controlling the issuing of such license provides: 'Every person desiring a license for the purpose of keeping, for public use or resort, a bowling alley, pool table, billiard table, bagatelle table or any table of like kind, shall apply in writing to the county court, and such writing shall state *Page 114 
the house and fully describe the place for which such license is desired, and the court may at its discretion grant or refusesuch application.' Section 35b (35) provides that where the place in which such business is to be conducted is situated in an incorporated city or town, the council or other governing body thereof shall have exclusive power and right to grant such license and all the other powers therein granted to the county court. The town of Cass is a municipality created under chapter 47 of the Code, and its powers generally are limited thereby; but the provisions of said chapter 109 of the Acts of 1921 clearly apply to all municipalities. For some reason the legislature chose to confer on the county courts and the councils of municipalities discretion to grant or refuse licenses for the purposes mentioned in said section. We decided recently that city councils proceeding under special charters and ordinances enacted pursuant thereto could not exercise their power arbitrarily by granting to some and withholding from others licenses to carry on a lawful business, and that as a condition precedent they must by ordinance prescribe general rules applicable to all. Houvouras v. City of Huntington, 90 W. Va. 245;State ex rel. Haddad v. City of Charleston, 92 W. Va. _____ [57], decided at the present term. The reason for denying such arbitrary authority is that its exercise, whether by statute or by ordinance, would render either unconstitutional and void. Yick Wo. v. Hopkins, 118 U.S. 356;Hagerstown v. B. O. R. R. Co., 107 Md. 178. The question now presented is: Do these authorities condemn the statute which purports to give respondents the discretion to grant or refuse licenses to keep for public use or resort a pool table? If we can, it is our duty to give such construction to the statute as will uphold it against attack upon constitutional grounds. While by its language arbitrary power might possibly be inferred, we think it must not be given such construction as would render it void on constitutional grounds." The discussion quoted was obiter. The evidence, establishing the unfitness of the applicant, (as was held) justified the town council in refusing the license though it possessed only a reasonable discretion in the premises. *Page 115 
 Houvouras v. City of Huntington, and Haddad v. City ofCharleston, involving restaurant licenses are not in point.Yick Wo v. Hopkins, involving "the right of petitioners to carry on, in the accustomed manner, their harmless and useful occupation (of laundrymen) on which they depended for a livelihood", is also without application. Hagerstown v. B. O.R. R. Co., in which the railroad company was prosecuted under a city ordinance for maintaining within the city limits stock pens for loading, unloading and caring for horses, cattle and other live stock delivered to it at regular stations in the course of its business, is likewise inapplicable. In State exrel. Hoffman v. Town of Clendennin, 92 W. Va. 619, the municipality was compelled by mandamus to issue pool room license to relator on the ground that no substantial reason had been shown for discriminating against him in favor of other applicants. The opinion of the case expresses the view that the keeping of pool tables for public resort and use is a legitimate business recognized as such by state policy, and that the exercise of an arbitrary power to prevent the carrying on of a lawful business would render the act conferring the power unconstitutional and void. Proceeding with the theory that the operation of a pool room is a legitimate business,Hardman v. Town of Glenville, cited, holds, in effect, that a municipality is without authority to refuse a license for such purpose except upon the ground that the applicant is not a fit or proper person to exercise the privilege. In denying the right of the municipality, in the interest of public morals, to refuse all applications for such licenses, JUDGE MILLER, speaking for the Court, in that case, said: "Respondents first plead the provisions of section 28 of chapter 47 of the Code, conferring upon them, they say, plenary powers, among other things, 'to license, or prohibit, the operation of pool and billiard rooms and maintaining for hire of pool and billiard tables,' wherefore, they aver, they have discretionary power to grant or withhold such licenses, and that none such have been granted for the fiscal year beginning July 1, 1926, and that a similar license had been also denied to one J. W. Lorentz. They further say that in this action they were governed, first, by their sound judgment and due and reasonable discretion, and with the firm belief that the conducting *Page 116 
of pool rooms in their municipality would not advance the moral, social or educational interests of the residents of the municipality, but would be detrimental thereto; moreover, that the moral force of said town was earnest and active in its opposition to the granting of such licenses, evidenced by a petition filed with respondents before their action was taken, praying that they should refuse licenses for the operation of pool rooms and billiard tables within the corporate limits of said town, which was signed by all the resident ministers and several members of the different churches and other prominent citizens, and by a large number of residents of said municipality, who had personally requested respondents to refuse to grant such licenses, which petition they exhibited with their return. And as a further and additional ground for their action, respondents answered that there is located within said municipality a State Normal School, having a large attendance of boys and girls from all the central counties of the state, some thirty in number, and that the president of said institution, who was also one of the members of said council, stated at the meeting at which said action was taken, that many of the parents who send their boys over eighteen years of age to said school, that being the age limit for boys to play at pool or loiter in such pool rooms, had seriously complained about the operation of such pool rooms in said town, representing that their boys spent too much time and money therein, and were frequently thrown in the company of and associated with all kinds and classes of boys and young men, and that the language used therein was not chaste, pure and refined, but on many occasions was vulgar and profane, and that unless their boys could be free from such influences they would cease to patronize the school; wherefore respondents say that the operation of such pool rooms within said municipality is hurtful and detrimental to said Normal School. We think it must be regarded as settled law of this state that the statute thus invoked does not confer upon municipal authorities arbitrary and uncontrolled power to the extent claimed in this case; that the discretion conferred to grant or refuse licenses to operate pool and billiard tables must have some reasonable foundation in fact, justifying its exercise. State ex rel. *Page 117 Hamrick v. County Court, 92 W. Va. 222; State ex rel. Hoffman
v. Town of Clendenin, Id. 618; Blissett v. Town of Littleton,87 W. Va. 127." The case is annotated in 53 A.L.R. 149, and is also the subject of adverse criticism in Volume 33, No. 1 (December, 1926) West Virginia Law Quarterly, page 116, and Volume 34, No. 3 (April, 1928) West Virginia Law Quarterly, *page 312. 
The authorities, generally, hold that because of its non-useful character and harmful tendency the business of operating pool or billiard rooms may be prohibited by the Legislature in the exercise of its police power. 6 R. C. L. 207, 208, 220; 20 A.L.R. 1482; 29 A.L.R. 41; 53 A.L.R. 143; 63 L.R.A. 337; 41 L.R.A. (N.S.) 153. Holding that an ordinance of the city of South Pasadena, California, prohibiting the keeping or maintaining of any hall or room in which billiard or pool tables were kept for hire or public use, did not contravene the Fourteenth Amendment of the Federal Constitution, the United States Supreme Court in the case ofMurphy v. People of the State of California, 225 U.S. 623, stated: "That the keeping of a billiard hall has a harmful tendency is a fact requiring no proof, and incapable of being controverted by the testimony of the plaintiff that his business was lawfully conducted, free from gaming or anything which could affect the morality of the community or of his patrons. The fact that there had been no disorder or open violation of the law does not prevent the municipal authorities from taking legislative notice of the idleness and other evils which result from the maintenance of a resort where it is the business of one to stimulate others to play beyond what is proper for legitimate recreation. * * * As said in Booth v.Illinois, 184 U.S. 425, 429: 'A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of *Page 118 
the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but it is clear, unmistakable infringement of rights secured by the fundamental law.' Under this principle ordinances prohibiting the keeping of billiard halls have many times been sustained by the courts.Tanner v. Albion, 5 Hill. 121; City of Tarkio v. Cook, 120 Missouri, 1; City of Clearwater v. Bowman, 72 Kansas, 92; Cityof Corinth v. Crittenden, 94 Mississippi, 41;Cole v. Village of Culbertson, 86 Nebraska, 160; Ex parteJones, 109 P. 570. Indeed, such regulations furnish early instances of the exercise of the police power by cities. For Lord Hale in 1672 (2 Keble, 846), upheld a municipal by-law against keeping bowling alleys because of the known and demoralizing tendency of such places."
It does not appear that the no license policy of Petersburg has been embodied in an ordinance. But whether or not its governing body is, by virtue of sections 35 and 35a, Chapter 109 and Chapter 138, Acts 1921, vested with absolute discretion to refuse pool room licenses with or without an ordinance declaring such policy, the evidence of unfitness of the applicant is sufficient to support its action in the exercise of a reasonable discretion. The judgment of the circuit court is therefore reversed.
Reversed.