BRACKMAN'S, INCORPORATED *v.* CITY OF HUNTINGTON

(No. 9527)

Submitted September 1, 1943. Decided September 28, 1943.

22

*Marcum & Gibson,* for petitioner.

*E. L. Hogsett,* for respondent.

Fox, Judge:

This is a proceeding in mandamus against the Mayor, Clerk, and members of the Council of The City of Huntington, a municipal corporation, operating under a special charter, in which the relator seeks an order requiring the City to issue to it· a license to sell non-intoxicating beer at its place of business therein.

The relator has been engaged in business at its present location for many years, and each year since 1933, when the sale of non-intoxicating beer became lawful in this State, has applied for and received a license to sell such beer at retail, both from the State, through its Tax Commissioner, and from the City of Huntington. In its petition it avers that it has, at all times, observed the laws and regulations pertaining to the sale of non-intoxicating beer. Effective July 1, 1943, the State Tax Commissioner issued to it a license to sell non-intoxicating beer at its place of business on Tenth Street in said City, for the license year beginning on said date. It then applied to the City of Huntington for a license to engage in the same business, and at the same location as that covered by its license from the State, and tendered and offered to pay to the City the license fee prescribed therefor. Its application was refused by the Council of the City on the ground that its place of business was "within three hundred feet of churches, Salvation Army, Huntington City Mission, or school property". It is conceded that relator's place of business is located within three hundred feet of a church in said City.

It is the contention of the relator that, having received from the State of West Virginia the license aforesaid, it became, and was, the legal duty of the City of Huntington to grant to it a license for like purposes, as applied for; and that it should be compelled to do so. The position of the City is, that, under its charter, and under general law, it had the legal right to refuse the license applied for, on the ground set up in its refusal order, and, therefore, that the writ prayed for should be refused. It is obvious that the questions raised by the parties require a careful study of the general law covering the issuance of licenses by the State and municipalities, to engage in businesses and occupations of a specified character; the several statutes pertaining to the sale of non-intoxicating beer; and the special Act of the Legislature which constitutes the present charter of the City of Huntington, under which it seeks to justify the action of which the relator complains.

The granting of licenses to carry on particular businesses and occupations is, of course, an attribute of the sovereignty of the State, and one which, under our constitution, is exercised by the Legislature. Possessing this power, it may delegate the same to other agencies of the government and has, in many instances, done so. For example, it has delegated to clerks of the county courts the power to issue State licenses in their respective counties. Code, 11-12-6. From the formation of the State it has been the policy of the Legislature, by general law, to authorize municipalities to issue licenses for, and to impose a license tax on, anything for which a state license is required. Beginning with the Code of 1868, Chapter 47, Section 33, this authority, with little change in the language granting it, has existed continuously and we now find it granted by Code, 8-4-13, which provides: "When anything, for which a state license is required, is to be done within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town." It should

be here noted that there is no restriction on the amount of the tax which may be imposed under this Section.

At this point it is well to state the fundamental principle that municipalities have no inherent power to exercise any function of government whatsoever. Their power rests upon grants of power made by the Legislature, and the Legislature may at its pleasure modify or withdraw the power so granted. It may, if it chooses, repeal any charter, or any law under which municipalities may be created, and destroy any municipal corporation at its will and pleasure. There is a further general principle that municipalities may only exercise powers not in conflict with general law, unless the power to do so is plainly and specifically granted. This principle has always prevailed, but is established beyond question by Section 39-a of Article VI of our Constitution, known as the Municipal Home Rule Amendment, ratified by the voters of the State in the general election held in 1936, and made effective by legislative action — Chapter 56, Acts 1937, as amended by Chapter 94, Acts 1939. The amendment and the general legislation enacted thereunder may not affect then existing special charters, and they are only referred to as supporting the general principle that general law predominates over supposed municipal authority where conflict between the two may exist.

Along with the general authority which the Legislature has conferred upon municipalities to require licenses as aforesaid, and to impose a tax thereon, the Legislature, in addition to requiring authorization of licenses by county courts in cases not otherwise provided for, has, at times, permitted municipalities to impose a veto upon the issuance of certain State licenses to conduct certain types of business within the municipality. Section 1, Chapter 32, Barnes' Code 1918, provides that "no person without a state license therefor shall" engage in certain specified businesses and occupations. Section 10 of the same Chapter provides that "The state license mentioned in the first section shall be issued only when authorized

by the county court of the county, except as herein otherwise provided, and except, further, that where the act, occupation or business for which such state license is necessary is to be done or carried on in an incorporated city, village or town, lawfully incorporated and its records kept in due form, the license shall be issued only when authorized under the charter of said city, village or town, by the council or license court thereof, as well as by the county court * * *."

The Legislature at its 1919 session, Chapter 102, made a radical change in the State's policy in respect to the issuance of licenses. By Section 1 of the Act, it classified businesses and occupations requiring a state license under twenty-five heads, and then amended the existing act as to Section 10 as quoted above, to read as follows: "The state licenses mentioned in section one, shall be issued by the clerk of the county court upon proper application filed with him, as provided in the next succeeding section." Thus it will be seen that the power of county courts and municipalities to exercise any control, or in any way restrain the issuance of state licenses ended; but the right of municipalities to require licenses for businesses and occupations licensed by the state and to impose a tax thereon, remained unimpaired and has continued until this day. At its Regular Session, the Legislature of 1921 by Chapter 143 amended Section 28 of Chapter 47 of the Code as it then existed, and authorized municipalities "to license, or prohibit, the operation of pool and billiard rooms and maintaining for hire of pool and billiard tables;" so that notwithstanding the provisions of Section 10, quoted above, municipalities became empowered to prohibit the operation of pool rooms and billiard tables within a municipality.

The act of 1919, referred to above, was interpreted and applied in *State ex rel. Kelly* v. *City of Grafton,* 87 W. Va. 191, 104 S. E. 487. It was held in that case that since said enactment, although a city might still require the state licensee to obtain a municipal permit or license, and pay

a fee therefor as a condition to doing business, it no longer possessed authority to refuse to grant such license when proper application was made therefor, and the requisite fee tendered; and in *Bissett* v. *Town of Littleton*, 87 W. Va. 127, 104 S. E. 289, it was held that a municipality had no inherent power to regulate the closing hours of a pool room operating under a license granted by the State. We think the act of 1919, as it has been construed and applied by this Court, justifies our present conclusion and holding that the State by said act, resumed its original control over the issuance of licenses, unhampered by any general law giving to the county courts, or to municipalities, any voice or control over the same, while at the same time saving municipalities the right to require permits or licenses, and to impose a tax thereon. The right to impose such regulations, not contrary to general law, as might be necessary to require the business or occupation so licensed to be conducted in an orderly manner, has never been abrogated, but aside from these local police powers, applying to all businesses and occupations, the rights of a municipality as to licenses, are in their nature fiscal, and designed only to secure the collection of such tax thereon as they may impose. The following cases support this theory of the law. *Houvouras* v. *City of Huntington*, 90 W. Va. 245, 110 S. E. 692; *Haddad* v. *City of Charleston*, 92 W. Va. 57, 114 S. E. 378; *Flanagan* v. *Town of Petersburg*, 108 W. Va. 111, 150 S. E. 382.

We have been dealing with general law as the same concerns the issuance of state licenses required for the businesses and occupations enumerated in Code, 11-12-1, and the rights in respect thereto granted to municipalities under Code, 8-4-13. We now come to a consideration of the several enactments of the Legislature authorizing the sale of non-intoxicating beer. It should be kept in mind that prior to 1933 the sale of the beverage called "non-intoxicating beer" was, under Code, 60-1-2, prohibited in this State, and the first act making the same lawful, soon repealed, provided for the sale thereof by

an amendment of certain sections of Chapter 60. This act was passed March 11, 1933, and made effective ninety days from its passage. Chapter 24, Acts of the Legislature, Regular Session, 1933. The act never became effective, for the reason that on April 12, 1933, the Legislature, at its First Extraordinary Session, 1933, expressly repealed Chapter 24 of the Regular Session, and substituted therefor Chapter 20 of the Acts of said Extraordinary Session, effective from passage; and so it is that Chapter 20 aforesaid, became the first effective statute authorizing the sale of non-intoxicating beer in this State.

This act proceeds to amend Code, 11-12-1, by adding thereto Sub-Section (Z), making the Section read: "No person without a state license therefor, shall * * * (Z) manufacture, sell or distribute, either at retail or wholesale, non-intoxicating beer as defined in section ninety-one of this Act", the effect of which was to require a state license to sell non-intoxicating beer. The act then amended Article 12, Chapter 11 of the Code by adding thereto thirteen additional sections, beginning with Section 91, and repeals not only Chapter 24 of the Acts of the Legislature, Regular Session, 1933, but, also, all other acts, general or special, coming within the purview of said acts and inconsistent therewith. Section 95 of the act provides that "All licenses under this act for manufacturers, brewers, distributors, package dealers and dispensers shall be issued by the tax commissioner." And by Section 98 it is provided that "A license shall be issued by the authorities so empowered in this act to any person, firm, association, partnership or corporation who, applies for a dispenser's license and who submits a written application for a license * * *." Section 100 of the act provides that "Municipal corporations in this state shall have authority to levy a tax under the provisions of this act upon any package dealer, dispenser, manufacturer or brewer and distributor of non-intoxicating beer; but the amount of the tax levied by such municipal corporation shall in no event exceed one-half the amount herein to

be levied by the state." While the issuance of license to those making proper application and showing is mandatory, Section 99 authorizes the tax commissioner to revoke any license on specified ground. On January 24, 1934, the Legislature at its Second Extraordinary Session, 1934, amended the act in particulars having no bearing on the matter in controversy herein.

On March 13, 1937, the Legislature at its Regular Session, 1937, enacted a comprehensive statute relating to the sale of non-intoxicating beer by an amendment to Chapter 11 of the Code, repealing Sections 91 to 103 inclusive, of Article 12 of said Chapter, and adding Article 15 thereto, carried in Michie's Code, 1937, as Article 16. Section 12 of the Article provides "A license may be issued by the tax commissioner to any person who submits an application therefor, accompanied by a license fee and bond, stating under oath" certain required information, thus vesting in the tax commissioner power and discretion to refuse to issue a license. The same section has given express authority to refuse a license if he shall be of the opinion " (a) That the applicant is not a suitable person to be licensed; or (b) That the place to be occupied by the applicant is not a suitable place; or (c) That the license should not be issued, for reasons of conduct declared to be unlawful by this act." By Section 14 it is provided that "To effectively carry out the provisions of this article the tax commissioner shall have the power and authority to adopt, promulgate, repeal, rescind and amend, in any manner required, rules, regulations, standards, requirements and orders, including the following", and by Section 18 it is provided: "The administration of this act is vested in and shall be exercised by the tax commissioner of West Virginia, to whom is hereby given all necessary power and authority in the premises * * *." By Section 17 the power of municipal corporations with respect to such licenses is granted in the following language: "Any municipal corporation in this state shall have authority to levy a license tax under the provisions

of this Act upon any retailer, distributor or brewer of non-intoxicating beer whose place of business is situated within such municipality, but the amount of the license tax levied by such municipal corporation shall in no event exceed the amount fixed herein to be levied by the state: Provided, however, That but one municipal tax is to be so imposed and that only by the municipality in which the place of business, or warehouse, is located. Cities and incorporated towns are hereby empowered to enact ordinances for the enforcement of this act in conformity with the provisions of the same." The Non-intoxicating Beer Act has not been further amended. Regulation No. 10 of the regulations and rules promulgated by the State Tax Commissioner under statutory authority provides, " (a) Retail beer licenses may be refused for establishments in reasonably close proximity to churches, schools, state institutions or privately owned charitable or eleemosynary institutions, or in that portion of any city or town which is predominantly residential. (b) The general welfare of the community and its citizens will be considered in such cases."

If we should consider only the statutes we have discussed to this point, we would have no difficulty in holding that sole, full and complete power to issue licenses to sell non-intoxicating beer is vested in the State Tax Commissioner without interference on the part of any municipality. He is expressly vested with such power. Any power in relation thereto possessed by municipalities, under general law, must rest either on Code, 8-4-13, or Section 17 of the Acts of 1937, both quoted above. Section 17 does no more, if it goes that far, than to grant the same power as that vested in municipalities under Code, 8-4-13, which provides that a municipality may require a license and impose a tax thereon; while Section 17 only provides that it "shall have authority to levy a license tax" and leaving out the provisions contained in Code, 8-4-13, empowering it to require a license. The distinction may not be important but it exists.

Be this as it may, what is now Code, 8-4-13, was in existence when *Kelly* v. *City of Grafton, supra,* was decided in 1920, and in one form or another has always been the law of this State. Under the case last mentioned, the power vested in municipalities by the statute in question does not extend to the refusal of a license where proper application is made therefor, and the applicant is the holder of a state license to carry on the business or occupation for which he seeks a municipal license or permit. We think the holding in the *Grafton* case is sound, and we adhere thereto.

But the respondents say that under a proper construction of the Charter of the City of Huntington, and ordinances and resolutions adopted thereunder, its action in refusing a license to the relator must be sustained. This presents a difficult question. It cannot be doubted that inconsistency exists, as between the statutes we have discussed above, and the provisions of the Charter of the City of Huntington. It may be that an irreconcilable repugnancy exists, requiring us to resort to general principles of law in determining which shall prevail.

The existing Charter of the City of Huntington was enacted by the Legislature at its Second Extraordinary Session, 1933, and became a law on February 16, 1934. Section 6 of this charter, among other things, provides that the City shall have power "to license, tax, regulate or prohibit theaters, * * *" and other things or business on which the state does or may exact a license tax", and "to have the sole and exclusive right to grant, refuse or revoke any and all licenses for the carrying on of any business within said city on which the state exacts a license tax;" and further "to prescribe and enforce ordinances and rules for the purpose of protecting the health, property, lives, decency, morality and good order of the city and its inhabitants, and to protect places of divine worship in and about the premises where held." Our attention is called to the further fact that the Legislature by Chapter 66, Regular Session, 1941, has provided

that councils of municipalities are given plenary power and authority by ordinance or resolution, to "protect places of divine worship and to preserve peace and order in and about the premises where held." This statute is an amendment to Code, 8-4-10, relating to municipalities created under Chapter 8 of the Code, not by special charters; but Code, 8-1-2, would seem to make the same apply to municipalities operating under special charters.

Chapter 38 of the Code of the City of Huntington undertakes to prescribe rules and regulations under which non-intoxicating beer may be sold in said City. By Section 9 thereof it is provided that a license therefor may be refused "(a) If the applicant has ever been convicted of a felony, or of a violation of the liquor laws, either Federal or State. (b) If the applicant has, during the period of one year, next immediately preceding the date of said application, had a non-intoxicating beer license revoked, or during the same period been convicted of any criminal offense. (c) If the applicant is not a suitable person to be licensed. (d) If the place to be occupied by the applicant is not a suitable place in the opinion of the Council. (e) If said license should not be issued because of conduct declared to be unlawful by Section 17 of this Chapter." In this connection, it may be noted that the power of the State Tax Commissioner to refuse a license is confined to cases where he shall be of the opinion that the applicant is not a suitable person to be licensed, or that the place to be occupied by the applicant is not a suitable place, or that the license should not be issued for reasons of conduct declared to be unlawful by the Act. Powers assumed by the city may or may not be broader than those granted the Tax Commissioner, depending on many provisions of the law which it is not necessary to consider at this time. Section 18 of Chapter 38 of the City code provides: "It shall be unlawful for any person to dispense any non-intoxicating beer, as defined and set forth in Section 2, Article 16, Chapter 11 of the West Virginia Code, within three hundred feet of the

property line of any educational institution within the corporate limits of the City." Subsequent to the date when relator's petition was filed in this Court, and subsequent to the service of the rule awarded herein, the City adopted a resolution defining the words "a suitable place" as used in the statutes and ordinance, as the same relates to the location where non-intoxicating beer may be sold. This resolution provides that "For a practical construction and application of Section 9(d), Ch. 38 of the City code, no place within three hundred (300) feet of the property line of a church or place of public worship shall be deemed suitable in the opinion of the council, and that no license for the retail sale or distribution of non-intoxicating beer be granted to any person, firm or corporation at a place within three hundred (300) feet of the property line of a church or place of public worship as hereinafter defined." It then proceeds to define the meaning of the word "church" as used in the resolution.

Prior to this resolution, there was no ordinance of the City of Huntington which, in terms, prohibited sale of non-intoxicating beer within three hundred feet of a church or place of public worship. We dispose of this resolution, so far as it affects the case now before us, by saying that the relator is entitled to have his case heard on the statutes and ordinances existing at the time of the awarding of the rule on the petition filed by him; and that we cannot consider, for any purpose, the resolution adopted by the City pending the progress of this litigation.

Much is attempted to be made of the fact that the present charter of the City of Huntington was enacted subsequent to the enactment of the non-intoxicating beer statutes of 1933. But the present beer statute, in which, for the first time, the provision vesting in the State Tax Commissioner the administration of the Act appears, was enacted subsequent to the charter enactment. Then the powers vested in the City with respect to licenses under

the present charter, and the protection of places of divine worship, were granted to the City in its 1921 Charter. Acts of Legislature, 1921 Municipal Charters, Chapter 11. Reliance is also made upon the provisions of Chapter 66, Acts of the Legislature, 1941, wherein municipalities in general are given authority by ordinance or resolution to "protect places of divine worship and to preserve peace and order in and about the premises where held." And it is said that this enactment was made after the non-intoxicating beer statute of 1937 was enacted. This is true, but this power was granted to municipalities in almost the same language by the Code of 1868, Chapter 47, Section 28, in which the power "to protect places of divine worship in and about the premises where held", is granted, and, so far as we know, every statute conferring general powers upon councils of municipalities, created under general law, have contained this provision with very little, if any, change in the language employed.

The 1921 Charter of the City of Huntington, as well as the general statutory provisions hereinbefore mentioned, were in effect when *Houvouras* v. *City of Huntington, supra,* was decided in 1922. And the following quotation from the opinion in that case discloses the interpretation which this Court placed upon the City's power.

> "* * * it is argued that the city by its charter is granted the sole and exclusive power to grant, refuse or revoke licenses. Sole and exclusive power, yes. Neither the county or state licensing authorities have any control, but it can not be thought for a moment that the city authorities were granted unbridled power to grant, refuse or revoke licenses at their whim and pleasure. The charter powers are not self-executing. To carry into effect the powers granted, the Board of Commissioners is further authorized to adopt all needful orders, rules and ordinances, not contrary to the laws and Constitution of the state. It was an implied condition of the broad power to grant, refuse or revoke licenses, that the Board would

> adopt reasonable ordinances under which licenses would be granted; it can hardly be contended that the Board under such grant of power and in the absence of any ordinance respecting licenses can refuse to grant licenses altogether, yet the argument of respondent's counsel carried to its final conclusion means just that."

No good reason is perceived why the same provision in the present charter should receive a different construction. That case may imply that if reasonable ordinances had been adopted in respect to granting of license, they might have been enforced. We question whether any such ruling was intended. Be that as it may, for reasons hereinafter stated, we are of the opinion that towns and cities are without power to adopt ordinances which might, in any way, interfere with legislative enactments subsequently passed in carrying out a particular policy of the Legislature, in respect to the sale of non-intoxicating beer.

Section 17 of the Non-intoxicating Beer Act provides that municipalities may adopt ordinances for the enforcement of the Act in conformity with the provisions of the same. One of the provisions of the Act is that the State Tax Commissioner may issue state license, and no other official, state or municipal, is therein granted a like power. The State, through its Legislature, the sole law-making authority, having acted in the matter, can cities or incorporated towns, themselves the creatures of the Legislature, nullify the State's action? Is an ordinance or resolution of a municipality, which attempts to undo what has been done by the State, adopted in conformity with the statute under which the State has acted? Did the Legislature ever intend, on the one hand, to grant to a citizen a license to engage in a particular business or occupation, and, with the other, empower its creatures to nullify its action? We think not. It is safe to assume that the Legislature meant to deal fairly with those to whom it granted licenses, and of whom it required fees therefor; and it is difficult to believe that it was ever intended

that any citizen should be induced by the State to pay a license fee for particular privileges and, through another, and relatively inferior agency of the State be deprived of the use of such privilege. Such a result would have no foundation either in logic, law or morals, and in our opinion was never intended.

This is the crux of the matter. Either the State of West Virginia, acting through legislative authority delegated to its State Tax Commissioner, has final decision on who shall be entitled to sell non-intoxicating beer in the City of Huntington, or that power rests in the Council of said City. To state the question is to answer it. Whatever inconsistency or repugnancy may exist in the statutes, charters, ordinances and resolutions we have discussed must be resolved in favor of the State. Attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the predominant power of the State, when that power has been exercised. To hold otherwise would lead to serious confusion, and ofttimes absurd results. In this connection it is well to recall that where the Legislature has seen fit to vest in municipalities what may be termed the veto power against the issuance of particular licenses, by requiring consent thereto in advance of the State's action, it has done so through express legislative enactment, and this in the face of the general statute conferring power on municipalities to require licenses in all cases when the State requires such license.

We hold, therefore, that the power to grant licenses for the sale of non-intoxicating beer is the sole prerogative of the State Tax Commissioner; that when a license for such purpose is so granted, a municipality may not interfere with the exercise of the privilege vested in the licensee thereunder, by refusing to grant a license or permit therefor; that the power of the City of Huntington goes no farther than to levy a license tax on the privilege granted by the State, and to adopt and enforce such or-

dinances and resolutions as it may deem advisable for the enforcement of the statute under which the State has acted, and in conformity therewith. Of course it also has the power to enact such ordinances respecting the orderly conduct of the business as might be applied to any other character of business requiring local police regulations, being carried on in the city. Section 17 of Chapter 12, Acts of the Legislature 1937, the Non-intoxicating Beer Acts, grants these powers and these only. All statutes, charters and ordinances, not in conformity therewith, must yield thereto, as the latest and final determination of the policy of this State as expressed by the Legislature, the body empowered by the Constitution to establish such policy. This is a broad statement of the fundamentals involved. Minor questions, such as whether a particular individual is a suitable person to receive a license; or a certain location is a suitable place for the business licensed; or whether certain location is in too close proximity to churches, schools, institutions or residential districts, call for cooperation between the licensing authority and the governing authorities of the municipalities. The law clearly contemplates that some places are not suitable for the location of a business in which non-intoxicating beer is sold; and that some individuals should not be permitted to engage in such business. The State Tax Commissioner is vested with discretion to pass upon such locations and such persons, a discretion which will not be interfered with except in cases where it is exercised in an arbitrary or fraudulent manner. No doubt, an ordinance or resolution of a municipality interdicting the sale of non-intoxicating beer at points in close proximity to churches, schools, institutions and in residential districts would, as it should, be favorably considered by the Tax Commissioner. Regulation No. 10 referred to above says as much. But when all is said and done, either the State or the municipality must make the final decision, and we hold that, under the statutes and authorities we have cited, the decision rests with the

State, through its Tax Commissioner. We think no other decision can be reached. If the Legislature did not so intend, it can correct the Act; and if the voters of the State desire a change, the way is open, through constitutional and statutory methods, to bring about such change. Courts may not do otherwise than interpret the law as they find it. It follows that the writ will be awarded as prayed for.

*Writ awarded.*