# CHARLESTON.

STATE *ex rel.* ROY J. KELLEY *v.* CITY OF GRAFTON *et al.*

Submitted September 21, 1920.    Decided October 12, 1920.

1. MUNICIPAL CORPORATIONS—*Without Police Power, Except as Expressly or Impliedly Delegated.*

    A municipal corporation possesses no inherent police power. It has only such regulatory authority as has been expressly or impliedly delegated to it by the Legislature. (p. 193).

2. SAME—*Power to Grant License for Particular Purpose Governed by State Law.*

    Where a municipal charter confers upon the governing body of a city authority to license acts to be done or business to be carried on within its jurisdiction, but provides that the exercise of such authority shall conform to the laws of the state,

its power to grant or refuse a license for a particular pur-
pose is governed by the requirements of the law then in
force.   (p. 193).

3.   LICENSES—*Statute Construed to Make Clerk of County Court
Licensing Authority of County.*

By the enactment of chapter 102, Acts 1919, amending chap-
ter 32, Code 1918, the Legislature has constituted the clerk of
the county court the chief licensing authority of the county.
(p. 195).

4.   SAME—*City Held Without Power to Refuse Permit to State
Licensee.*

Since the enactment of chapter 102, Acts 1919, the con-
current discretionary power which the law theretofore had
conferred upon a municipal corporation in the granting of li-
censes for acts or business to be done or carried on within its
jurisdiction no longer remains, and, though the city council or
other governing body may still require the state licensee to
obtain a municipal permit or license, and pay a fee therefor,
as a condition of the lawful right to do the act or carry on
such business, yet it no longer possesses authority to refuse
to grant such license upon proper application therefor and
tender of the requisite fee.   (p. 197).

(WILLIAMS, PRESIDENT, absent.)

Original mandamus by the State, on relation of Roy J. Kelley,
against the City of Grafton and others.

*Writ awarded.*

*O. E. Wyckoff* and *John T. Simms,* for relator.
*G. W. Ford,* for respondents.

LYNCH, JUDGE:

The corporate authorities of the city of Grafton, being a
mayor and two commissioners acting under the commission form
of government, refused to issue to Roy J. Kelley, after he had
obtained a state license therefor, a municipal license or permit to
operate pool tables at his place of business in the city upon his
offer and tender of the required tax therefor, and to approve him
as a person having the qualification necessary to be intrusted
with the enjoyment of such privilege.   To compel the grant of
such privilege he obtained, at the suit of the state, a writ com-
manding respondents to comply with his petition therefor or

show cause for refusing it.   Disregarding the first alternative command, the mayor and commissioners attempt to justify their non-compliance (1) by invoking the provisions of an ordinance of the city of Grafton adopted May 1, 1911, and therefore prior to the date of the reorganization under the charter passed by the Legislature in 1913 (chapter 79, Acts 1913) ; (2) by the disqualification of Kelley due to his association and connection with other applicants, likewise refused because of conduct exhibited by them while engaged in the same business under a former license granted by them.   The question presented relates to the power of a city to refuse to grant a license, for an act or business to be done or carried on therein, to one who already has obtained a state license authorizing him to do the thing in question.

Considering these assignments in reverse order, we notice first that respondents' attempted justification of the refusal of the license is predicated upon the right to invoke for that purpose the police power of the city.   But in that regard we call attention to and restate a rule, the frequent application of which has made it a fixed principle of law in this state, that is, a municipal corporation possesses no essentially inherent power of that character but only such regulatory authority as has specifically been delegated to it by the state or is necessarily implied from powers expressly granted.   *Judy* v. *Lashley,* 50 W. Va. 628; *State* v. *Godfrey,* 54 W. Va. 54; *Improvement Co.* v. *City of Bluefield,* 69 W. Va. 1; *St.Mary's* v. *Hope Nat. Gas Co.,* 71 W. Va. 76; *City of Benwood* v. *Public Service Commission,* 75 W. Va. 127; *State* v. *Porter,* 84 W. Va. 398, 99 S. E. 508; and the recent case of *Bissett* v. *Town of Littleton,* 87 W. Va. 127, 104 S. E. 289, involving the validity of an ordinance purporting to regulate the closing hours of pool rooms.   It is necessary, therefore, to examine the extent of the statutory authority, if any is conferred upon the city, from which it can lawfully justify its action.

The ordinance invoked by the city council was passed in 1911 pursuant to the provisions of the charter then in force.   Chapter 44, Acts 1899.   Sections 11 and 12 of the ordinance, providing for the issuance of licenses such as the relator insists he

is entitled to, make such right depend upon the assent of the city council, without which no such license shall be granted, and not then unless the council "shall be satisfied, and so enter upon its record, that the applicant for such license is not of intemperate habits, has not been convicted of a felony, and has not been convicted of selling intoxicating liquors on Sunday."

For the purposes of this decision it may be assumed, though not decided, that this ordinance lawfully was passed in accordance with the provisions of the charter then in force. Section 28, c. 44, Acts 1899, authorized the city council, whenever anything for which a state license was required was to be done in said city, to require a city license therefor; and section 34, provided that "the council shall prescribe, by ordinance, the manner in which licenses of all kinds shall be applied for and granted."

The charter of 1913 (chapter 79, Acts 1913), which constitutes the present authority of the city, in section 3 provides that "all by-laws, ordinances and resolutions lawfully passed and in force in the city of Grafton under its former organization, and not inconsistent herewith, shall remain in force until altered or repealed by the commission elected under the provisions of this act." This section requires, not only that the ordinances theretofore passed shall have been lawfully enacted, in order that they may continue in force and effect under the new charter, but that they shall not be inconsistent with it. Section 19 of the charter of 1913 provides: "The commission shall have the right to levy and collect taxes and grant licenses; provided, however, * * * that the granting of such licenses shall not be repugnant to the constitution and laws of the United States or of this state."

It may also fairly be assumed, for the purpose of this decision, that the power to grant, conferred by the first portion of the section, impliedly carries with it by necessary implication the power to refuse licenses. If it does not, then clearly respondents had no right to refuse the license applied for by petitioner. But if it does, the same implication applies to the second portion of the section quoted, thereby making the provision that the granting of licenses shall not be repugnant to the laws of this state

equally applicable to the refusal to grant licenses. In other words, the procedure to be adopted with respect to the granting of licenses is expressly made to depend for its validity upon the laws of the state, and an ordinance passed under a prior charter, whose validity under the present is made to depend upon its consistency with it, likewise depends upon the laws of the state, and in case of repugnancy the latter governs and controls. Not only is this the express requirement of the charter of 1913, but it accords with the provisions of section 29, c. 47, Code 1918, relating to the authority of cities, towns and villages to enact ordinances for the purpose of carrying into effect their enumerated and implied powers.

Turning now to the general state law pertaining to the granting of licenses, it is apparent that prior to the enactment of chapter 102, Acts 1919, amending and re-enacting certain provisions of chapter 32, Code 1918, and repealing others, it undoubtedly was the policy of the legislature to require, in many instances, both state and municipal licenses where the business to be carried on or the act to be done was within an incorporated city, town or village. For according to section 10, c. 32, Code 1918, "the state license mentioned in the first section (including pool room licenses) shall be issued *only when authorized* by the county court of the county, except  *   *   *   that when the act, occupation or business for which such state license is necessary is to be done or carried on in an incorporated city, village or town, *   *   *   the license shall be issued *only when authorized* under the charter of said city, village or town by the council or license court thereof, *as well as by the county court."* This section, as disclosed by the portions which we have italicized, seems not only to require a double license, but from the use of the clause, "only when authorized," to confer upon both the county court and municipal council a measure of discretionary power in the granting of such licenses. And doubtless relying upon this section, as well as upon the charter of 1899, the city of Grafton, in order to give effect to its discretionary power, passed the ordinance of 1911 prescribing the limits or measure of such discretion. Other sections of chapter 32, prior to the amendment of 1919, recognize this double authority and discretion.

But section 10, as amended by chapter 102, Acts 1919, substitutes the mandatory "shall" for the clause, "only when authorized," and omits all reference to city authority with respect to licenses. It reads: "The state licenses mentioned in section one *shall* be issued by the clerk of the county court upon proper application filed with him." The legislative intent is clear to make the issuance of licenses a mandatory ministerial duty, not involving any element of discretion, and to constitute the clerk of the county court the chief licensing agent of the county. The intent to remove from the municipality the concurrent discretionary power which it could invoke under the old law is evidenced, not only by the significant omission of those parts of former section 10 conferring such power, but by the repeal of section 15 which expressly recognized the authority of municipalities to license acts and certain kinds of business within their borders; by the amendment of section 34 so as to give to the county court alone power to revoke a license for good cause, a power which theretofore had been vested in either the county court or council; and by the amendment of section 37, relating to assignment of licenses, by striking out all provisions relating to municipal powers. Most important, however, as showing the mandatory nature of the 1919 act respecting licenses, is the repeal of section 19, c. 32, Code 1918. Its provision was: "No license for any purpose mentioned in the first section shall be granted unless the tribunal granting the same shall be satisfied, and so enter upon its record, journal or minutes, that the applicant for such license is not of intemperate habits, and has not been convicted of a felony, or who shall be convicted hereafter of selling intoxicating liquors on Sunday." It was this section apparently that served as the basis and model for the ordinance passed by the city of Grafton in 1911. Its repeal, read in connection with the modification or repeal of the sections above referred to, clearly shows the legislative intent to constitute the county court clerk the state's chief licensing authority of the county, and to clothe him with no discretionary power, but to make it his mandatory duty to issue licenses upon proper application therefor, subject, however, to the right reserved to the

county court by section 34, Acts 1919, to revoke such licenses for cause.

This change in policy, however, does not prevent a municipality from requiring a municipal license for anything to be done within its borders, even though a state license for the same thing is also required. For "whenever anything for which a state license is required is to be done within such city, town or village, the council may require a city, town or village license therefor, and may impose a tax thereon for the use of the city, town or village." Section 33, c. 47, Code 1918. But this, when considered in connection with chapter 102, Acts 1919, amendatory of chapter 32, Code 1918, evidently looks only to the financial interest of the city, town or village, and confers upon it an optional authority to require a license and impose a tax even though a state license also is required. The municipality, in the exercise of its discretion, may decline to require a license for such purpose, but if it does, it has no authority to refuse to grant it upon tender of the proper license fee and presentation of the state license granted by the clerk of the county court. The only restriction placed upon the municipality in requiring such license and tax is that the fee shall not be greater in amount than the state tax imposed for the same act, unless its charter reserves to the council the right to fix the rate of such license. Section 18, c. 32, Code 1918. Other provisions of the section last referred to, empowering the municipality, when authorized by its charter, to impose a penalty upon any person who, relying upon his state license, attempts to do the thing therein licensed without first obstaning a license therefor from the municipality within whose borders the thing is to be done, are merely in aid of the collection by the municipality of its own license taxes, when it elects to require such a license under the permissive statutes above referred to.

From a consideration of these various statutes, the legislative intent to constitute the county court clerk the chief licensing authority of the county; to make the issuance of licenses by him a mandatory not a discretionary duty, subject only to the reserved power of revocation for cause: to give to a municipality authority, if it chooses to exercise it, to require licenses for the same

things, where the act to be done or business to be carried on is within the borders of the city; and to empower it, when authorized by charter, to impose a penalty for failure to obtain such municipal license; is plainly apparent.   But no authority is given to refuse to grant such license when properly applied for.

The municipality is protected and safeguarded against disorder or disturbance of the peace through its power to abate nuisances by proper proceedings, and by its right to apply to the county court to revoke a license theretofore granted.

For these reasons we award the writ.

*Writ awarded.*