TSUTRAS AUTOMATIC PHONOGRAPH COMPANY

v.

THE CITY OF WILLIAMSON, *etc., et al.*

(No. 10012)

Submitted September 14, 1948.  Decided

September 28, 1948.

HAYMOND AND LOVINS, JUDGES, dissenting.

*Preece & Slater, W. H. D. Preece, Ersel L. Slater,* for appellant.

*Wade H. Bronson, Jr.,* for appellees.

FOX, JUDGE:

The plaintiff, Tsutras Automatic Phonograph Company, Inc., is engaged in the business of owning and operating automatic phonographs and pin ball machines in and around the City of Williamson in this State. Under Code, 11-12-10 the yearly required license fee for a State license for keeping and maintaining the character of machines

operated by the plaintiff is $5.00 for each machine. Code, 8-4-13 provides:

"Wherever anything, for which a State license is required, is to be done within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town."

This provision is contained in the general law governing municipal corporations.

The City of Williamson is a municipal corporation, operating under a special charter, enacted by the Legislature at its regular session, 1933, Section 24 of which reads as follows:

"The council in its discretion shall be vested with authority to impose license or privilege taxes payable to the city, upon such businesses, professions, occupations, or enterprises as the council may deem proper, and to make and enforce all reasonable ordinances and regulations respecting the same: Provided, however, that nothing therein contained shall be in conflict with the constitution or laws of this State or of the United States of America."

Acting under this authority, the council of the city, on February 22, 1935, adopted an ordinance which provided that each and every non-gambling marble or dice amusement device be registered with the clerk of the city, and that on each such device which operates by the insertion of a penny, a license or tax of $12.00 per year should be imposed; that on any such device which operates on the insertion of a nickel or coin of larger denomination, a fee or license of $24.00 per year be imposed; and that for each and every phonograph used in the city there should be imposed a license or tax of $12.00 per year where not more than five were operated; at the rate of $9.00 per year where

not less than six nor more than ten were so operated; and at the rate of $6.00 per year where more than ten were operated.

Plaintiff is the owner of thirty-seven phonograph machines which it operates in the City of Williamson, and which it admits are subject to a license tax in said city, to the extent that the State of West Virginia may impose a license tax therefor, to-wit, $5.00 for each machine. On this theory it offered to pay to the City of Williamson the sum of $201.84 as the license for the fiscal year beginning July 1, 1946, and on September 26, 1946, made such offer by check tendered on that date. The manner and form of such tender is not questioned. On October 16, 1946, the said check so offered was returned to the drawer, and attention called to the ordinance noted above.

Plaintiff's bill was filed in the office of the Clerk of the Circuit Court of Mingo County on February 15, 1947, and sets out the dispute in which the plaintiff and the City of Williamson were then involved, concerning the license fees aforesaid. It alleged that the officials of the City of Williamson had threatened to seize, disconnect and appropriate the machines operated by it in the city, by reason of the non-payment of the license fees demanded; alleged the tender of the proper license fees; asserted that the amount tendered, covering its machines, was the same as those imposed by the State therefor; and prayed that the city be enjoined and inhibited from seizing the machines, aforesaid, molesting in any manner the operations of said machines, or in any way interfering with plaintiff's business, and that the city be required to accept the legal license fees or taxes for said machines, and to issue to the plaintiff license to operate the same. Also, that the ordinance of February 22, 1935, be declared null and void, insofar as it conflicted with the laws of the State of West Virginia, and for general relief. The City of Williamson filed its demurrer to said bill and assigned four specific grounds therefor, (1) that an injunction would not lie to restrain the collection of a tax merely because of its il-

legality or unconstitutionality, a court of equity lacking jurisdiction to interfere in such a case because a law action would afford a plain and adequate remedy; (2) that a court of equity lacked jurisdiction to interfere by way of an injunction in the collection of a tax which is merely irregular or erroneous, the proper remedy being at law; (3) that a court of equity lacked jurisdiction to enjoin the collection of a tax merely upon the ground that it is excessive; and (4) that a court of equity lacked jurisdiction to enjoin a prosecution of a crime, the remedy being adequate by way of defending the prosecution. On February 15, 1947, and prior to the filing of this demurrer, a temporary injunction had been granted, restraining and inhibiting the defendants from disconnecting, seizing or taking possession the said machines and from interfering and molesting the plaintiff in the transaction of its business, until further order of the court. On June 19, 1947, the cause was heard upon the plaintiff's bill and the demurrer thereto, and the injunction theretofore granted was dissolved, and the bill dismissed. From that decree, plaintiff was granted this appeal.

The cause has been argued in this court upon the controlling question, namely, the right of the City of Williamson to impose a license tax upon the machines operated by the plaintiff therein, in excess of that imposed by the State therefor. The jurisdictional questions raised by the demurrer have not been here discussed, and appear to have been waived or abandoned. They will not be considered by us because, in our opinion, our decision should rest upon the single question raised on the bill and in the argument. However, we do not mean by our action to indicate any opinion on the merits of the points raised on demurrer.

Under our constitution, power of taxation is vested in the Legislature, and by Section 1 of Article 10 it is provided that: "The Legislature shall have authority to tax privileges, franchises, and incomes of persons and corporations * * *". The Legislature may delegate to municipalities the power to tax, including the power to tax privileges, and

26

it has done so by Code, 8-4-13, quoted above, a provision appearing in the statute law applying to municipalities heretofore organized under the provisions of what is now Chapter 8 of the Code. In addition to this general power, the Legislature granted such power to the City of Williamson by Section 24 of Chapter 136, of the Acts of the Legislature, Regular Session, 1933, which is quoted above. That charter provision remains in full force and effect, and is not in any wise affected by what is known as the municipal home rules statute, Chapter 56, Acts of the Legislature, Regular Session, 1937, and Section 9 of Article I thereof so provides. Therefore, Section 12 of Article 4 of said act, referred to in plaintiff's brief, containing a reference to police power, need not be considered.

In none of the statutory provisions above referred to is there any limitation on the amount of the license fee or tax which municipalities may impose on an activity for which the State imposes a license tax. Clearly, what is now the section covered by Code, 8-4-13, has never contained any such limitations. What is now Code, 8-4-13, was, in substance, Section 26 of Chapter 54, in the 1860 Code of Virginia; Section 33, Chapter 47, of our Code of 1868; and Section 33 of Chapter 47, of Barnes Code of 1923. Prior to the enactment of our Code of 1931, what is now Section 8-4-13, covered also the matter of the issuance of licenses to sell intoxicating liquors; but when our present code was adopted, there being no legal authority for the sale of intoxicating liquors, that part of the section was eliminated as obsolete. Therefore, so far as Code, 8-4-13 and precedent statutes authorizing a license tax by municipalities, under the general authority first mentioned above, it does not appear that there was ever any specific limitation on the power of the town or city as to the amount of tax it might impose, subject, of course, to the obviously implied limitation that such a tax, or other restriction, could not be imposed to the extent that it interfered with the operation of the activities licensed by the State. See *Brackman's v. City of Huntington*, 126 W.Va. 21, 27 S. E. 2d. 71.

By Chapter 102, Acts of the Legislature, 1919, the Legislature made radical changes in our license law, and deprived county courts and municipalities of their former discretionary power to veto the issuance of license in a county or municipality, and made it the mandatory duty of the clerk of the County Court in each of the counties, to issue state licenses, but still permitting municipalities to impose a tax upon activities licensed by the State, and to issue licenses therefor. Subsequent to the enactment of this 1919 statute, in the case of *State ex rel Kelley v. City of Grafton*, 87 W. Va. 191, 104 S. E. 487, this Court held that a municipal corporation possessed no inherent police power, and could exercise only such regulatory authority as had been delegated to it by the Legislature; that where a municipal charter confers upon the governing body municipal authority to license acts or businesses, with the provision that the exercise of such authority should conform to the laws of the State, its power to grant or refuse such a license was governed by the requirement of the law then in force; that by the enactment of the 1919 statute, the Legislature had constituted the clerk of the County Court the chief licensing authority of the county; and that said act destroyed the theretofore existing power vested in municipal corporations in respect to the issuing of license, but that the municipality might still require a license, and impose a tax therefor. This was the general effect of this decision, but in the body of the opinion it is stated:

"The municipality, in the exercise of its discretion, may decline to require a license for such purpose, but if it does, it has no authority to refuse to grant it upon tender of the proper license fee and presentation of the state license granted by the clerk of the county court. The only restriction placed upon the municipality in requiring such a license and tax is that the fee shall not be greater in amount than the State tax imposed for the same act, unless its charter reserves to

the council the right to fix the rate of such licenses."

This quotation is relied upon as supporting the contention of the plaintiff that the City of Williamson can not impose a greater license tax on plaintiff than that imposed by the State for the same act.

The *Kelley* case was decided in October, 1920. At that time there was effective Section 18, Chapter 32 of the Code of 1913, which reads as follows:

"Where the council of a city, town or village is authorized by its charter or any law of the State to impose a penalty for doing any act, or engaging in any business or occupation within the limits of such municipality, without first having obtained a license therefor pursuant to the ordinances of said town, no state license shall exonerate the person holding the same from any such penalty, whether such penalty be greater or less than herein provided; but no incorporated city, village or town shall impose or require the payment of a greater annual license tax for doing any act or engaging in any business within the limits of such city, village or town, than the state tax imposed by this chapter for doing the same act or engaging in the same business or occupation, except in such city, town or village having a special charter which reserves to the council the right to fix the rate of such license."

This section also appears as Section 18 of Chapter 32, Barnes Code of 1923, and was amended by the Code of 1931, and now appears therein as Section 9, Article 12, Chapter 11, and reads as follows:

"Where the council of a city, town or village is authorized by its charter or any law of the State to impose a penalty for doing any act, or engag-

ing in any business or occupation within the limits of such municipality, without first having obtained a license therefor pursuant to the ordinances of such town, no state license shall exonerate the person holding the same from any such penalty, whether such penalty be greater or less than herein provided."

To this section, as so amended, a statement is added by the revisers that: "That part of Section 18, Chapter 32, Code, 1923, limiting municipalities to the amount of the State license is omitted. It was designed primarily to apply to liquor licenses and is therefore obsolete." It will appear, therefore, that the statement made in the opinion in *Kelley v. City of Grafton, supra,* was based upon a statute which no longer exists. The case of *Brackman's v. City of Huntington, supra,* which by way of *dicta,* approves the *Kelley* case, should be construed to approve what that case held on the questions involved therein, and not to approve *dicta* which later statutory development makes obsolete.

We do not think it can be said that the action of the City of Williamson, in imposing a license tax greater in amount than that imposed by the State for the same act, conflicts with the law of the State. Such conflict could develop only where the Legislature had placed a limit on the taxing power of the municipality. Except in cases where a specific limitation is made by statute, as the law now stands, the power of taxation, with respect to license tax which a municipality may impose, is not, in express terms, limited as to amount. Apparently, the Legislature has not intended to place any limit thereon, because a former existing limitation has been removed by direct legislative action. Prior to the Code of 1931, there was a limitation which placed a restriction upon the power to tax licenses granted municipalities, by what was then Section 33 of Chapter 47 of the Code, and which became Code, 8-4-13. But when that limitation was removed by the Code of 1931, when the Legislature thereafter sought to impose a limitation on the power of municipalities to tax licenses, it did

so by direct action, as illustrated by Chapter 12, Section 17, Acts of 1937, relating to non-intoxicating beer, and by Section 13b, Article 4, Chapter 3, Acts of the Legislature, Extraordinary Session of 1947, relating to business or occupation taxes by municipalities. In our opinion, these acts strongly argue that the Legislature had not theretofore intended to put any limitation as to amount on the power of municipalities to impose license taxes.

That it had no such intent is further evidenced by Section 43, of Chapter 119, Acts of the Legislature, 1939 now appearing in Michie's Code, 1943, as Section 43, Article 12, Chapter 11, and which reads:

"When any municipality is authorized by its charter or by any law of this state to impose a penalty for engaging in or prosecuting any business, activity, trade or employment within the limits of such municipality without first having obtained a license therefor pursuant to the ordinances of such town, no state license issued under this article shall exonerate the licensee from any such penalty, unless otherwise expressly provided, whether such penalty be greater or less than that imposed for the violation of the provisions of this article."

This perpetuates the policy adopted by the Legislature when it enacted the Code of 1931. There has been no later enactment on the subject.

We are of the opinion, therefore, that, as the statute now stands, the City of Williamson has the power to impose the license tax authorized by the ordinance adopted by its council, on February 22, 1935, even though that ordinance authorized the imposition of taxes greater in amount than that imposed by the State for the same activity. This is not to hold that a municipality has unlimited power in respect to the imposition of a license tax. Such tax must bear some fair relation to the value to the licensee of the

license so issued, and must always have regard to the paramount right of the State to control the issuance of licenses, and to insure the licensee of his right to operate thereunder. A license tax imposed by a municipality, the effect of which would be to make the license granted by the State of no value could not be sustained. On this point, each case must be governed by its circumstances, but until the Legislature acts there is no escape from the situation as it now exists. In the case at bar, however, there is no allegation that the tax imposed by the City of Williamson is unreasonable or confiscatory. The whole reliance of the plaintiff is that the City of Williamson does not possess the legal power to act under the ordinance of its council, dated February 22, 1935.

The decree of the Circuit Court of Mingo County is affirmed.

*Affirmed.*

HAYMOND, JUDGE, *dissenting* :

I can not agree to the holding of the majority that, under the statutory provisions here involved which confer upon a municipality the authority to impose a license tax for its use upon anything done within the town for which a state license is required, the power of the municipality, in the absence of statutory restrictions, to impose a license tax on a business or an activity greater in amount than that imposed by the State for the same activity is not limited, except that the municipality may not impose a tax in an amount which would make prohibitive the operation of the activity under a license granted by the State. That construction or application of the provisions of the statutes, Code, 1931, 8-4-13, and Section 24 of Chapter 136, Acts of the Legislature, 1933, Regular Session, quoted in the opinion of the majority and pursuant to which the ordinance of the City of Williamson, here under attack, was adopted, is, in my opinion, logically unsound, legally unwarranted, and necessarily productive of uncertainty and confusion in every instance in which the license tax

imposed by a municipality exceeds in amount that imposed by the State upon the same activity.

The statute, Section 10 of Chapter 119, Acts of the Legislature, 1939, Michie's Code, 1943, 11-12-10, cited in the majority opinion as "Code, 11-12-10", which imposes an annual tax of $5.00 for a state license on the same activity for which the defendant, The City of Williamson, under the ordinance exacts an annual license tax ranging, in the variously specified situations, from $6.00 to $24.00, and the quoted provisions of the statutes already referred to, must be read, considered, construed and applied together, and none of them can be invoked or pursued to the exclusion or disregard of any of the others. Statutes which relate to the same subject must be read and construed together in order that effect may be given to all the provisions of each statute. 51 Am. Jur., Taxation, Section 312. *Harbert v. County Court of Harrison County,* 129 W. Va. 54, 39 S. E. 2d 177; *White v. Morton,* 114 W. Va. 29, 171 S. E. 762; *State v. Hoult,* 113 W. Va. 587, 169 S. E. 241; *State v. Reed,* 107 W. Va. 563, 149 S. E. 669; *Hays v. Harris,* 73 W. Va. 17, 80 S. E. 827; *State v. Snyder,* 64 W. Va. 659, 63 S. E. 385. This fundamental rule of statutory construction applies to tax statutes. The application of this rule requires that, in dealing with the statutes here involved, consideration and effect be given to the limitation of the amount imposed by the State for the privilege of engaging in the same activity as that for which, by virtue of the grant by the Legislature of taxing power to the municipality, it may also impose a tax.

With respect to the extent and the limits of the taxing power of a municipality the generally recognized principle is that a grant of that power to it by the Legislature will be strictly construed. 38 Am. Jur., Municipal Corporations, Section 385. See *Harvey Coal & Coke Company v. Dillon, Tax Commissioner,* 59 W. Va. 605, 53 S. E. 928, 6 L. R. A. (N.S.) 628. In construing and applying statutes which impose taxes the well established rule is that where the intent or the meaning of such statutes is

doubtful they will, in the absence of an expression of a contrary legislative intention, be construed most strongly against the taxing authority and in favor of the taxpayer. Any doubt as to the meaning of statutes of this character is to be resolved against the taxing authority and in favor of the taxpayer. 51 Am. Jur., Taxation, Section 316. *Harvey Coal & Coke Company v. Dillon, Tax Commissioner,* 59 W. Va. 605, 53 S.E. 928, 6 L.R.A. (N.S.) 628. Another well established rule is that in construing a tax statute, where there are two possible constructions, that construction will be preferred which does not produce unfair, arbitrary or oppressive results. 51 Am. Jur., Taxation, Section 315.

Under these well established and generally recognized principles of statutory construction, if applied to the statutes now under consideration, it appears clear to me that the restriction of $5.00 as the limit in amount of the annual license tax imposed by the State on the activities which it also permits the City of Williamson to tax under the provisions of Code, 8-4-13, and Section 24 of Chapter 136, Acts of the Legislature, 1933, Regular Session, by necessary implication and by virtue of the express provision in Section 24 that nothing contained in any ordinance "shall be in conflict with the constitution or laws of this state or of the United States of America", limits the amount of the tax to be imposed by the city to that expressly fixed for an annual state license for the same activity when performed within the municipality. Without such limitation there seems to me to exist, in actual practice and operation, the strange incongruity of the sovereign State whose plenary power of taxation, as exercised by its Legislature, is limited only by constitutional provisions, restricting itself to an annual tax of $5.00 and, at the same time, passively permitting its creature to impose upon the same activity a tax which is unlimited in amount except when it operates to deprive the sovereign of the tax which it has exacted from the same taxpayer. Of course the Legislature can confer power upon a municipality to exact a greater tax than that fixed by statute for a state

license for the same activity, but I think that the existing statutes do not authorize the higher municipal license tax. In my judgement the mere absence of any restriction in Code, 1931, 8-4-13 and in Section 24 of Chapter 136, Acts of the Legislature, 1933, Regular Session, as to the amount of the tax, does not take the place of an express grant of power or operate as recognition that such power exists in the municipality to levy a municipal tax greater in amount than that of the State tax for engaging in the same activity.

I reject as utterly unsound and impractical the construction placed upon the statutory provisions quoted in the majority opinion because, in my judgement, it will inevitably lead to uncertainty and confusion in every instance in which a municipality imposes a tax in excess of that imposed by the State upon persons engaged in the same activity within the municipality and become a fruitful source of controversy and litigation in the effort to determine when the excess in the amount of the municipal tax defeats the collection of the tax imposed by the State by making the operation of the twice taxed activity prohibitive, which is the only limit fixed by the holdng of the majority as to the amount of the tax which may be imposed by the municipality. Who knows or can say, except a court, in litigation instituted to determine the question, after a time consuming and costly hearing, whether the tax imposed by the city has the effect of depriving the doubly taxed activity of its financial ability to pay the tax imposed by the State after it has survived and paid the tax previously exacted by the municipality? And before its ability so to pay has been exhausted and before that exhaustion has been recognized or officially determined, will the taxing power of the municipality authorize and sustain a municipal tax ten, or twenty, or fifty times more than the tax imposed by the State? The holding of the majority suggests and creates these questions, but does not answer any of them except as to the excess of the present municipal tax over the tax fixed by the State which the defendant has imposed and which is now held to be

valid. It is not unreasonable to suppose that, under the holding of the majority, in instances in which a municipality will levy a tax in excess of that fixed for a state license for the same activity, the taxpayer will assert, and the municipality will deny, that the excess is prohibitive and, though the twice taxed operator must establish the prohibitive effect of the municipal tax, that requirement will not arrest his contentious action and a lawsuit will follow.

With deference, I can not bring myself to believe that in exercising its sovereign power of taxation the Legislature, which is presumed to know existing statutes, by enacting either the provisions of Code, 8-4-13, or the provision of Section 24 of Chapter 136, Acts of the Legislature, 1933, Regular Session, intended to accomplish the illogical and unsatisfactory result to which these statutes, as now construed and applied, give rise with respect to the practical matter of taxation. I would read and construe together the provisions of Code, 8-4-13, Section 24 of Chapter 136, Acts of the Legislature, 1933, Regular Session, and Section 10 of Chapter 119, Acts of the Legislature, 1939, Regular Session, Michie's Code, 1943, 11-12-10, give effect to every provision of all three statutes, resolve the doubt as to their meaning with respect to the limit fixed upon the amount of the municipal tax against the municipality and in favor of the taxpayer and, by necessary implication and recognition of the prohibition against conflict by the ordinance with any law of this State, contained in the concluding sentence of Section 24, restrict the amount of the tax to be imposed by the city to the amount of $5.00 fixed by Section 10 of Chapter 119, Acts of the Legislature, 1939, Regular Session, Michie's Code, 1943, 11-12-10, for an annual state license for engaging in the same activity.

In support of its conclusion, the majority directs attention to the action of the Legislature in eliminating from Code, 11-12-9, an earlier statutory provision that "no incorporated city, village or town shall impose or require

36

the payment of a greater annual license tax for doing any act or engaging in any business within the limits of such city, village or town, than the state tax imposed by this chapter for doing the same act or engaging in the same business or occupation, except in such city, town or village having a special charter which reserves to the council the right to fix the rate of such license." The principal reason for omitting this provision, as explained in the note of the Revisers of the Code of 1931, quoted in the majority opinion, was that, as the provision was "designed primarily to apply to liquor licenses", which, as is well known, were, before the era of Prohibition, granted by municipalities, it was rendered obsolete by the drastic revision of the law of this State relating to that troublesome and controversial subject. In my judgment the elimination of that provision of the earlier act, originally passed before the advent of total Prohibition in this State, can, by no sound process of reasoning, justify the conclusion that by such action, the Legislature intended to create or recognize in any municipality taxing power which is practically unlimited as to the amount of the tax. The view that the omission of the provision has that effect is inconsistent with the well recognized and firmly established principles that "the authority of municipalities to levy a tax must be made clearly to appear, and that doubts, if any, as to the power sought to be exercised, must be resolved against the municipality;" and that "the power to tax is a separate, independent power, and exists in municipal corporations only to the extent to which it is clearly conferred by their charters or other state statutes, and its existence cannot be inferred or deduced from other powers conferred," 38 Am. Jur., Municipal Corporations, Section 385. See also *Hyre v. Brown*, 102 W.Va. 505, 135 S.E. 656, 49 A.L.R. 1230, in which this Court, in referring to the powers of a municipal corporation, said in Point 3 of the syllabus: "Where a fair, substantial, reasonable doubt exists as to whether such corporation is possessed of a power, the power must be denied." In my opinion, a construction which, by reason of the elimination of the above quoted provision of the former statute, recognizes

the power of a municipality to impose a tax without limit as to amount, is contrary to sound public policy in matters of taxation and tends to produce the intolerable practical results to which I have already adverted. Such construction also ignores the warning, sounded by Daniel Webster in his argument in *McCullouch v. The State of Maryland,* 4 Wheaton 316, 4 L.ed. 579, and since repeated by many Courts, that "An unlimited power to tax involves, necessarily, a power to destroy."

I disagree with the construction placed upon the statutes here under consideration for an additional reason. If the Legislature had intended, in enacting these statutes, to give a municipality the power to impose a tax in excess of that fixed for a state license upon the activity taxed, it could, and doubtless would, have made that intention plain by the use of apt and adequate terms. Its failure so to do is significant. Under the recognized and established principle of interpretation of written instruments, including statutes, that the expression of one thing implies the exclusion of another, contained in the phrase *"expressio unius est exclusio alterius"*, the omission of a provision which would clearly confer the authority upon a municipality to impose a tax greater in amount than that imposed for a state license for the same act indicates to me that the Legislature intended to limit the amount of the municipal tax to the amount fixed by Section 10 of Chapter 119, Acts of the Legislature, 1939, Regular Session, Michie's Code, 11-12-10, for a license granted by the State to engage in the same activity.

Instead of holding with the majority that "In the absence of statutory restrictions, the power of a municipality to impose a license tax on a business or activity greater in amount than the license tax imposed by the State for the same activity, is not limited as to amount, except that it may not impose a tax, the effect of which would be to make prohibitive operation under a license granted by the State.", I would hold that, when it does not clearly appear that power has been conferred upon a municipality to im-

pose a tax greater in amount than that fixed by the State for a license to engage in the same activity, the power of a municipality to impose such tax is limited to the amount of the license tax imposed by the State for the same activity.

I respectfully dissent from the decision of the majority in this case; and, for the reasons stated, I would reverse the decree of the circuit court.

I am authorized to say that Judge Lovins joins in this dissent.