# CHARLESTON.

STATE *v.* ERNEST REED
(No. 6408)

Submitted September 11, 1929.   Decided September 17, 1929.

564

*Brown W. Payne*, for plaintiff in error.

*Howard B. Lee*, Attorney General, and *W. Elliott Nefflen*, Assistant Attorney General, for the State.

MAXWELL, JUDGE:

Defendant prosecutes this writ of error to a conviction on indictment under section 16c (1), chapter 144, Code, charging him with failure to support and maintain his illegitimate child, Charles Edward Cosby. At the time of the birth of this child in August or September, 1926, the child's mother, Susie Cosby, was the wife of Robert Cosby, who went from their home in Raleigh County to a sanitarium late in December, 1925, for treatment for tuberculosis, where he remained continuously until his death about the time of the birth of the child. The mother admits that she and her husband resided together as husband and wife down to the time that he went to the sanitarium, but says that she had not had sexual intercourse with him for a period of about four years prior to the time of the trial in April, 1928. The prosecutrix further testified that the defendant is the father of the child. He plead not guilty. His assignment of error that the court refused to file his two special pleas denying the right of the prosecutrix, a married woman, to bastardize her child which was born within a year of the time when she was admittedly living with her husband, is not well taken because the defendant was permitted to raise the same question under the general issue plea. He therefore suffered no prejudice on that score.

In a prosecution of this sort, where the paternity of the

child is not admitted, there are involved two propositions, first, whether the defendant is the father of the alleged illegitimate child, and second, whether he has failed to provide support and maintenance for such child, it being in necessitous circumstances. Consideration of the second proposition cannot arise in the absence of competent testimony tending to establish the first, that is, that the defendant is the father of the child.

The statute under which this case is prosecuted, sections 16c (1)-(8), chapter 144, Code, was first made to apply to illegitimate children by the amendment and re-enactment of the Legislature of 1917. See Acts 1917, chapter 51. And insofar as the said statute applies to illegitimate children it must be considered as corollary to, and furnishing additional relief to that furnished by, the bastardy statute, Code, chapter 80, which has been in force for many years. *State v. Bennett,* 90 W. Va. 477. The two statutes should be read together. "Statutes relating to the same subject, whether passed at the same or different times, must be read and construed together." *Hays* v. *Harris,* 73 W. Va. 17. See also, *State* v. *Bennett, supra; State* v. *Snyder,* 64 W. Va. 659; *Piedmont Finance Corp.* v. *Commonwealth,* (Va.) 135 S. E. 673; 2 Lewis' Sutherland Statutory Construction, section 443. It is provided in section 1 of chapter 80 of the Code, that a married woman who has been living separate and apart from her husband for the space of one year or more, and shall not at any time during such separation, have co-habited with her husband, may, if she be delivered of a child at any time after the said one year, and while such separation continues, accuse any person, other than her husband, of being the father of such child. This very wholesome provision of the law as to the necessary lapse of time in such cases must be read into the later statute in connection with the primary inquiry, namely, as to whether the defendant is the father of the alleged illegitimate child. The prosecutrix says that the child was born the 30th day of September, 1926; the attending physician's certificate shows August 17, 1926. In either event, the date of the birth of the child was well within one year of the time when it is admitted by the prosecutrix that

she and her husband were living together as husband and wife. She therefore comes within the inhibition of one year which is placed by the statute upon a married woman who seeks to bastardize her child.

This statutary inhibition of one year which is placed on a married woman who seeks to charge the paternity of her child to a person other than her husband does not involve any new or startling principle of law. It is merely a modification of a clear and well settled principle of the common law. This rule was recognized and applied by Lord Mansfield in 1777 in the case of *Goodright* v. *Moss,* 2 Cowp. 591, 98 Eng. Reprints, 1257: ''As to the time of the birth, the father and mother are the most proper witnesses to prove it. But it is a rule, founded in decency, morality, and policy, that they shall not be permitted to say after marriage, that they have had no connection, and therefore that the offspring is spurious; more especially the mother, who is the offending party.'' This rule is generally recognized. The following statement of the same and the reason thereof are found in *Mink* v. *State,* 60 Wis. 583: ''The law is well settled that the wife, on the question of the legitimacy of her children, is incompetent to give evidence of the non-access of her husband during the time in which they must have been begotten. This rule is founded on the very highest ground of public policy, decency, and morality. The presumption of the law is in such case that the husband had access to the wife, and this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotence or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child. Testimony of the wife even tending to show such a fact, or of any fact from which non-access could be inferred, or of any collateral fact connected with this main fact, is to be most scrupulously kept out of the case; and such non-access and illegitimacy must be clearly proved by other testimony.'' In 3 Ruling Case Law, page 732, is the following concise statement of the rule: ''Non-access cannot be proved by either the husband or the wife, whether the action be civil or criminal, or whether the

proceeding is one of settlement or bastardy, or to recover property claimed as heir at law.'' See also: 7 Corpus Juris, p. 988; Long on Domestic Relations, sec. 243; Peck on Domestic Relations, sec. 105; 1 Schouler on Domestic Relations, sec. 696; 6 Am. & Eng. Ann. Cases, p. 816, note.

It is provided in section 16c (6) of chapter 144, Code, that no other or greater evidence shall be required to prove the marriage of such husband and wife, or that the defendant is the father or mother of such child or children, than is or shall be required to prove such facts in a civil action. The common law rule denying the right of a married woman to bastardize her children applies in civil actions. And since the effect of the said section of the statute is to apply the rules of evidence of civil cases in determining the paternity of a child under said statute, the said common law rule must be applied therein, save as modified by Code, chapter 80, section 1.

A further portion of said section 16c (6), reads: ''In no prosecution under this act shall any existing statute or rule of law prohibiting the disclosure of confidential communications between husband and wife apply, and both husband and wife shall be competent and compellable witnesses to testify against each other to any and all relevant matters, including the fact of such marriage, and the parentage of such child or children.'' There is not involved in this case the question of disclosure of confidential communications between husband and wife, nor is it a situation wherein one spouse is called upon to testify against the other. The proceeding is not against the husband or wife but a third party. It is therefore not apparent to us on what score this provision of the statute can have any possible application in this case, though the said provision is sought to be invoked on behalf of the state.

On the question of the possible physical inability of the husband of the prosecutrix to engage in sexual intercourse at the time when in the course of nature the child must have been begotten, the evidence is wholly inadequate. The sole evidence on that point is that of a physician who says that for a long time before the husband went to the sanitarium

he was absolutely stiff in the hips, and the witness doubts if during the last six or eight months before the husband went away he was capable of indulging in sexual intercourse. This evidence is in no sense conclusive. The requirement of the law is that in such circumstances the impotence of the husband must be clearly and fully established. *Commonwealth* v. *Wentz*, 1 Ashmead's Reports 269. On the question of the legitimacy of the child of a married woman, the non-access of her husband whether from separation or impotency must be clearly and satisfactorily proved. *Mink* v. *State, supra.*

A sister of the prosecutrix, as a witness for the state, testified that she heard the defendant admit that he was the father of the child, Charles Edward Cosby. The defendant may have made the statement thus imputed to him, but the paternity of the child is not thereby legally fastened upon him. In the very nature of things he did not know whether he was the father of the child or not. The most he could be warranted in saying would be that he had had sexual intercourse with the prosecutrix at about the time, when, in the course of nature, the child was begotten.

The attorney-general moved to dismiss this writ of error as improvidently awarded because the order of the circuit court of Raleigh County refusing a writ of error to the criminal court of said county, wherein this action was tried, predicated such refusal on a finding that the judgment of the trial court was "clearly right," and did not use the phrase "plainly right" as set forth in the legislative act creating said court. Acts 1907, chapter 29. Section 19 of said act provides that if the circuit court or judge thereof refuses a writ of error on the ground that the judgment is plainly right, and the order of rejection so states, application for writ of error may then be made to this Court or a judge thereof in vacation. The word "clearly" as used in the circuit court order is so nearly synonymous with "plainly" that we deem the variance wholly inconsequential.

For the reasons above set forth the judgment of the trial court is reversed, the verdict of the jury set aside and a new trial awarded.

*Reversed and remanded.*