No. 20,446.

Bonnie Jean Beck *v.* Raymond Russell Beck.
(384 P. [2d] 731)

Decided August 26, 1963.

Mr. Robert S. Wham, Mr. Frank A. Elzi, Mr. Robert A. Powell, for plaintiff in error.

Mr. Bernard D. Morley, for defendant in error.

*In Department.*

Opinion by Mr. Justice Sutton.

The sole issue presented by this record is whether defendant in error, Raymond Russell Beck, was entitled to a favorable judgment on the issue of paternity of a minor child in the trial court. This in turn, however, depends upon whether a blood test considered by the court was both admissible and sufficient to overcome the presumption of legitimacy.

The evidence was conflicting as to whether the husband had access to the wife Bonnie Jean Beck during the possible period of conception. At the conclusion of the trial the court directed a verdict in favor of the mother. The husband then filed a motion for judgment *non obstante veredicto* attaching thereto a blood test taken after trial by agreement before trial of the parties, and which stated in pertinent part:

"James Ronald Beck cannot be the son of Raymond Russell Beck since this child possess antigen 'N,' which he has inherited from his mother and which Mr. Beck does not possess. Since Mr. Beck possesses antigen 'M,' the child would have to possess antigen 'M' if he were indeed the son of this man. Furthermore, the child possesses antigen 'E' which is not possessed by either his mother or Mr. Beck."

The trial court then granted the husband's motion and this writ of error followed.

In *Lanford v. Lanford,* 151 Colo. 211, 377 P. (2d) 115 (1962), it was said that the presumption of legitimacy is one of the strongest known to the law and can be overcome only by proof of non-access or impotency of the husband. This rule, however, does not require a husband to prove either ground to the degree of impossibility. *Commonwealth v. Kitchen,* 299 Mass. 7, 11 N.E. (2d) 483 (1937). And, the rule has now been broadened by statute in some jurisdictions in regard to blood tests in order to recognize the advance of medical science in this field. See for example: *Commonwealth*

*v. Gromo,* 190 Pa. Super 519, 154 A (2d) 417 (1959) and *Commonwealth v. D'Avella,* (Mass. 19959), 162 N.E. (2d) 19. Also see cases cited in 46 A.L.R. (2d) 1019, et seq. Colorado's statute on this subject provides that:

"Blood grouping tests — costs. — In any action, suit, or proceeding wherein the paternity of any child or children is denied, the court on the motion of the reputed father shall order the mother, her child, or children, and the reputed father to submit to one or more blood grouping tests by a duly qualified physician or other duly qualified person to determine whether or not the reputed father can be excluded as being the father of said child or children, and the results of such tests may be received in evidence, but only in cases where definite exclusion is established. The cost of such test, or tests, may be assumed by the person denying paternity or the court may tax the cost of such test, or tests, to either party." 1960 Perm. Supp., C.R.S. section 52-1-27.

As we read the statute a reputed father is entitled as a matter of right to have such tests made; he is further entitled to have the tests received in evidence when definite exclusion is established, provided a proper foundation is laid for the introduction of such evidence. The words "may be received in evidence" in the act must have that effect if they are to be meaningful.

In the instant case the accuracy of the blood test was not challenged by the wife, her only thesis on this issue being that it is incompetent to overcome the presumption of legitimacy. We must hold otherwise. To hold as she contends would be contrary to an established scientific fact. In this connection see the excellent dissent in *Prochnow v. Prochnow,* 274 Wis. 491, 80 N.W. (2d) 278 (1955) with which we agree and which contains a thorough discussion of this type of medical evidence. We note that following the *Prochnow* decision, and undoubtedly due to the persuasive dissent therein, the Wisconsin statute was amended to make it manda-

tory for the court to order the blood test when relevant in a paternity action and that the result shall be conclusive where exclusion is established. See *Limberg v. Limberg,* 5 Wis. (2d) 327, 92 N.W. (2d) 767 (1959), and, see Ch. 180, Laws of 1957 and Sec. 325.23, Ch. 325, Title XXX, Wis. Statutes, vol. 2, 1957.

Judgment affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.