250 S.E.2d 40 (1978)
L. A. M.
v.
M. L. M.
No. 13915.
Supreme Court of Appeals of West Virginia.
November 28, 1978.
Dissenting Opinion December 19, 1978.
*41 William L. Jacobs, Parkersburg, for appellant.
Hague, Rudolph, Hague & Lantz, Eugene T. Hague, Parkersburg, for appellee.
*42 McGRAW, Justice:
Plaintiff (wife) and defendant (husband) were married on August 22, 1975, and last cohabited as husband and wife in Wood County on October 6, 1975. On that day the plaintiff moved out of the marital home and into the home of her parents where she has since resided.
On December 11, 1975, the wife filed a complaint for divorce and other relief alleging that she was pregnant and that her husband had been guilty of cruel and inhuman treatment.
The husband on December 22, 1975, filed an answer admitting she was pregnant but denying that he was guilty of cruel and inhuman treatment. This answer was later amended to show that he denied his wife was pregnant. Then on May 12, 1976, he filed an "Amended and Supplement Answer and Supplemental Counterclaim" wherein he admitted that the wife was pregnant at the time the complaint was filed and alleged that she was pregnant at the time of their marriage without his knowledge. For his counterclaim he alleged that the wife was "with child by some person other than the defendant, without the knowledge of the defendant, at the time of the marriage" and therein prayed that the marriage be annulled.
On April 12, 1976, about 7½ months after the marriage, the plaintiff was delivered of a child.
The wife stated that she and her husband, at his urging, indulged in premarital sex only one time, and that this occurred on August 6, 1975, at the mobile home that was to be and eventually became their marital dwelling. The wife testified that shortly before this lone act of intercourse, the mother of the defendant had been helping her prepare the home for their eventual use. The defendant's mother, however, denied being there at all that day and testified that on that date she was in the city of Parkersburg making plans and purchases for an upcoming bridal shower for the parties. She tendered a dated receipt from a Parkersburg gift shop which was subsequently entered into evidence in support of her testimony.
The defendant testified that he did not have sexual intercourse with her at any time prior to the marriage and that on August 6, 1975, he worked from 7:00 a. m. to 5:30 p. m. and was not at the proposed marital home at any time on that day. He testified that the child was not his and that he had no idea who the biological father was.
When he was called to the stand by his wife's counsel, the following colloquy transpired:
Q Have you paid any doctor bills for your baby with reference to office calls for your baby and treatment of your baby?
A It isn't my baby.
Q You deny it is your child?
A Yes, sir.
Q Whose baby is it may I ask you that?
A I have no idea.
The wife testified that she was examined by a physician on September 8, 1975, and was then informed that she was pregnant. She states that she told her husband on that day, but that he denied that she was pregnant. He testified that he was not so informed until October 21, 1975, two weeks after the wife had moved out of their marital home.
The physician who delivered the child testified that the normal gestation period is 280 days and that the child delivered was a full term, healthy infant with no abnormalities. Another physician who had examined the wife on October 13, 1975, testified that he believed she was then three months pregnant.
The record clearly shows that the parties were engaged in a close relationship, anticipating marriage for many months before the time of conception.
Upon hearing all the evidence, the trial court ruled that the wife had not adequately proven grounds for divorce or separate maintenance and that the husband had failed to meet the burden of proving his ground for annulment in that the evidence *43 of record was insufficient to rebut the presumption of legitimacy. The court noted sua sponte, however, that, in the absence of a presumption that the child is legitimate, it "would be of the opinion that the evidence tends to prove that the child was conceived substantially earlier than the 6th day of August, 1975, and by a male other than the defendant"[1] (emphasis added).
The husband, who was ordered to pay $30.00 a week toward the support and maintenance of the child, brings this appeal seeking to be relieved of any further liability for the support of the child and seeking to reverse the trial court's refusal to grant him the annulment.
The Court must deal with the following three issues in order to resolve this appeal:
1. Does the presumption of legitimacy apply with equal force to a child born in wedlock but conceived prior to marriage?
2. What degree of proof must the person alleging illegitimacy establish in order to rebut the presumption? Did the court err in holding the husband failed to adequately rebut the presumption?
3. Did the trial court err in denying an annulment to the husband?
The general rule applicable to this area of law is aptly set forth in Annot., 57 A.L.R.2d 729, 731 (1958) as follows:
Except in Louisiana, wherein a statute makes the presumption of legitimacy dependent upon the precise number of days elapsing between marriage and the birth of a child . . . in every jurisdiction in which the question has arisen it has been expressly held or recognized that a child born in wedlock, though conceived prior to the marriage, is presumptively legitimate (emphasis added).
It appears that at least twenty-six states (including Virginia) and England have applied the presumption to cases of premarital conception, and that few, if any, have refused to do so.
The presumption has been recognized by this Court in several cases. E. g., syl. pt. 3, State ex rel. Worley v. Lavender, 147 W.Va. 803, 131 S.E.2d 752 (1963); Gardner v. Gardner, 144 W.Va. 630, 110 S.E.2d 495, 499 (1959); State ex rel. Lipscomb v. Joplin, 131 W.Va. 302, 309, 47 S.E.2d 221, 225 (1948); syl. pts. 1 & 3, Ohlinger v. Roush, 119 W.Va. 272, 193 S.E. 328 (1937); State v. Reed, 107 W.Va. 563, 149 S.E. 669 (1929).
In light of the longstanding, unfettered existence of the presumption in this jurisdiction and the overwhelming force of unanimous precedents from others, we hold that the presumption of legitimacy arises from birth in wedlock even where it is shown that conception occurred before the parties married.
The degree of proof necessary to overcome the presumption in cases involving post-marital conception has been established by this Court in syllabus point 4 of State v. Reed, 107 W.Va. 563, 149 S.E. 669 (1929):
On the question of the legitimacy of the child of a married woman, the nonaccess of her husband . . . must be clearly and satisfactorily proved.
In the case at bar the evidence of non-access was based solely on the husband's testimony. It is clear to us that the presumption has not been overcome since non-access of the husband has not been "clearly and satisfactorily proved" by this mere denial of paternity.[2]
This case illustrates well the rationale for the presumption of legitimacy and shows why courts universally refuse to illegitimize children solely upon the unsupported, self-serving testimony of a party seeking to *44 avoid pecuniary obligation. In some close cases, the presumption might possibly sire injustice. The record in this case, however, emphatically demonstrates that this is not such a case.
Because of the evidence, the trial court's denial of the annulment must also be affirmed. We need not look beyond the first syllabus point in Allen v. Allen, 126 W.Va. 415, 28 S.E.2d 829 (1944) or the very statute providing for annulment, W.Va. Code § 48-2-2, in order to acknowledge the propriety of that ruling:
In every such case . . . where the validity of a marriage is called in question, it shall be presumed that the marriage is valid, unless the contrary be clearly proven . . . . (emphasis added)
The husband's testimony quoted above from the record fails to "clearly prove" the ground for annulment alleged, i. e. that "the wife, without the knowledge of the husband, was with child by some person other than the husband . . ." W.Va. Code § 48-2-1.
Furthermore, the longstanding principle of law reappearing in such cases as syl. pt. 4, Belcher v. Belcher, 151 W.Va. 274, 151 S.E.2d 635 (1966) and syl. pt. 3, Taylor v. Taylor, 128 W.Va. 198, 36 S.E.2d 601 (1945) also compels affirmance of the lower court's ruling:
In a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of evidence.
We have concluded that the presumption of legitimacy, long recognized in this jurisdiction, applies in the instant case even though the child was conceived a few weeks before the parties married. Because of the total insufficiency of evidence showing illegitimacy, the trial court did not err when it held that the husband failed to rebut the presumption and failed to prove his alleged ground for annulment.
Affirmed.
NEELY, Justice, dissenting:
I do not object to the majority's heralding of the presumption of legitimacy as it applies to a child conceived during a marriage nor do I gainsay their extension of the presumption to cases where a child is conceived before, but born during, a marriage when the status of the child is raised by strangers to the parent-child relationship. What I do find incorrect is the majority's application of the presumption to an annulment sought under W.Va.Code, 48-2-1 [1969] which provides:
All marriages . . . when, at the time of marriage, the wife, without the knowledge of the husband, was with child by some person other than the husband. . . are voidable and shall be void from the time they are so declared by a judgment order of nullity.
The majority fails to discern that different standards of proof can apply to different issues based on the same facts. When the status, legitimate vel non, of a child born in lawful wedlock is contested by strangers (e. g. siblings or other relatives) then the presumption of legitimacy should apply to protect the child; however, in an annulment proceeding the status of the parties to the marriage is the issue and the status of the child is declared one of the grounds for annulmentan issue to be determined by a preponderance of the evidence.
While the majority does not expressly apply the presumption of legitimacy to the annulment in this case, they do so implicitly by affirming the lower court's holding. The lower court did not clearly differentiate between its holdings that child support was due and that the annulment was denied when it said:
[I]n absence of a presumption that the child is legitimate by reason of the fact that it was born in lawful wedlock, this Court would be of the opinion that the evidence tends to prove the child was conceived substantially earlier . . . and by a male other than the defendant.
I think it should be made clear that no presumption of legitimacy applies when an *45 annulment is sought under the above quoted provision of W.Va.Code, 48-2-1 [1969]. Consequently this case is wrong. Our law does not contemplate a man supporting a child not his own merely because it is a nice idea arbitrarily to relieve the Department of Welfare of this burden. While W.Va. Code, 48-2-2 [1969] provides that all marriages are presumed valid and any invalidity must be clearly proven, this does not amount to a presumption that any grounds a petitioner asserts are presumed to be false; it means only that he must clearly prove his grounds. For instance, an annulment may be procured upon clear proof by a petitioner that his marriage partner was afflicted with a venereal disease when the marriage was solemnized, but no one has ever proffered a presumption that people being married do not suffer from venereal diseases. It is the purest form of irony for the Legislature to provide a litigant with grounds for annulment while the judiciary with a trick of legerdemain snatches them away under the guise of a presumption.
In the present case, I find that the husband clearly proved that his wife, without his knowledge, was with the child of another man at the time of their marriage. The wife testified that the only incident of sexual intercourse between the parties before their marriage on August 22, 1975 occurred on August 6, 1975 while the husband denied any premarital sexual relations. At that point the lower court was entitled to believe either testimony, but when overwhelming proof in the form of medical testimony was presented to the effect that the time of conception would necessarily have been considerably before August 6, 1975 then the husband's allegations about the child's not being his own become clearly more believable than those of his spouse and the husband has met his burden of clear proof. For that reason I would reverse the decision of the lower court and instruct it to enter a decree granting the husband an annulment.
NOTES
[1] Equivocal language humanely offered for the purpose of ameliorating the impact of a judicial decision upon disgruntled litigants is ill-advised when it obfuscates the record and presents an arguable issue for appeal which would not otherwise exist.
[2] The presumption has been overcome by evidence of such things as oversea absences, impotency, sterility, blood tests, confinement in institutions and that the child was of another race. See 9 Wigmore, Evidence § 2527 (Chadbourn rev. 1961); 10 Am.Jur.2d Bastards § 10-32 (1963); Annot., 57 A.L.R.2d 736 (1958); Annot., 32 A.L.R.3d 1303 (1970).