317 S.E.2d 513

**STATE of West Virginia ex rel. Kim Marie OLDAKER**

v.

**William L. FURY, Judge, etc., et al.**

**No. 15995.**

Supreme Court of Appeals of West Virginia.

June 13, 1984.

J. Burton Hunter, III, Buckhannon, for relator.

No appearance for respondents.

McHUGH, Chief Justice:

This action is before this Court upon the petition of Kim Marie Oldaker, the petitioner, in which she seeks a writ of prohibition be directed against William L. Fury, Judge of the Circuit Court of Upshur County, and Richard T. Oldaker, the petitioner's husband. The petitioner seeks to prohibit the circuit court from ordering the petitioner and her child to submit to blood tests for the purpose of excluding the respondent Oldaker as the father of the child, and further seeks to prohibit the respondent Oldaker from contesting the paternity of the child in the divorce proceeding pending below. This Court only has before it the petition for a writ of prohibition, an attached memorandum of law and, as an exhibit, the order of the circuit court.

The facts of this case, as alleged in the petition, are as follows: On September 1, 1979, the petitioner and the respondent Oldaker were married in Upshur County, West Virginia. On February 8, 1980, Jessica Ann Oldaker was born. However, on April 12, 1983, the petitioner filed a divorce

complaint against the respondent Oldaker. In his answer, the respondent Oldaker denied the paternity of the child. Upon the petitioner's motion for temporary support and the respondent Oldaker's motion for blood tests, a hearing was held in the Circuit Court of Upshur County. As a result, the circuit court, in an order entered June 22, 1983, awarded attorney fees to the petitioner but ordered the parties and the child to submit to blood tests for the purpose of excluding the respondent Oldaker as the father of the child.

The petitioner asserts that the respondent Oldaker should be prevented from raising the issue of paternity in a divorce proceeding based upon the equitable defenses of laches, condonation and estoppel. The petitioner contends that inasmuch as the respondent Oldaker treated the child as his own throughout the marriage he should be estopped from denying the paternity of the child in a divorce proceeding over three years after her birth. However, the threshold issue presented to this Court is whether in a divorce action a trial court possesses the authority to determine the issue of paternity and order the parties to submit to blood tests for the purpose of rebutting the presumption of legitimacy.

It is uncontested by the parties that the child in this action is presumed to be legitimate by virtue of this Court's holding in syllabus point 1 of *L.A.M. v. M.L.M.*, 162 W.Va. 273, 250 S.E.2d 40 (1978), wherein we held: "A presumption of legitimacy arises from birth in wedlock even where it is shown that conception occurred before the parties married." *See also State ex rel. J.L.K. v. R.A.I.*, 170 W.Va. 339, 294 S.E.2d 142 (1982). We further held in syllabus point 2 of *L.A.M. v. M.L.M., supra, quoting State v. Reed*, 107 W.Va. 563, 149 S.E. 669 (1929), that in order to rebut this presumption, evidence of the common law defense of nonaccess " 'must be clearly and satisfactorily proved.' "[1]

---

1. Although the issue remains unresolved in West Virginia, it should be noted that for the purpose of rebutting the presumption of legitimacy, the accuracy and reliability of blood tests is widely accepted. *See State ex rel. S.M.B. v.*

*D.A.P.*, 168 W.Va. 455, 284 S.E.2d 912, 914–15 (1981); *L.A.M. v. M.L.M., supra,* 162 W.Va. at 278, 250 S.E.2d at 43 n. 2; *see also V.L.P. v. J.S.S.*, 407 A.2d 244 (Del.Fam.Ct.1978); *Carlyon v. Weeks*, 387 So.2d 465 (Fla.Dist.Ct.App.1980);

As a general rule, most jurisdictions empower trial courts to determine the issue of paternity in divorce proceedings whenever paternity becomes an issue. *See generally Annot.*, 65 A.L.R.2d 1381 (Later Case Service 1984); H. Clark, *The Law of Domestic Relations* § 15.1, at 492 (1968). In several jurisdictions, such power emanates from specific statutory authority, *e.g., Beck v. Beck*, 153 Colo. 90, 384 P.2d 731 (1963); *Crain v. Crain*, 104 Idaho 666, 662 P.2d 538 (1983); *State ex rel. Fabian v. Fabian*, 116 N.H. 516, 363 A.2d 1007 (1976); *Anonymous v. Anonymous*, 1 A.D.2d 312, 150 N.Y.S.2d 344 (1956), and in other jurisdictions the authority of a trial court to determine paternity in a divorce proceeding results from judicial decree. *E.g., Richardson v. Richardson*, 252 Ark. 244, 478 S.W.2d 423 (1972); *Simmons v. Simmons*, 479 S.W.2d 585 (Ky.1972); *Shepherd v. Shepherd*, 81 Mich.App. 465, 265 N.W.2d 374 (1978). In a divorce action, the issue of the paternity of a child may arise in an action based upon the ground of adultery, however, as noted in the annotation cited above, the issue of paternity most often becomes an issue in a divorce action when the mother seeks child support from the husband and the husband denies the paternity of the child. *Annot.*, 65 A.L.R.2d § 1, at 1383.

With respect to the support of a child, an anomaly exists under our statutory framework regarding paternity. In *State ex rel. J.L.K. v. R.A.I.*, *supra*, 170 W.Va. at 346, 294 S.E.2d at 149 n. 13, this Court noted

the existence of a "dilemma [in] which a mother may find herself if her husband, by using one of the common law defenses, is able to prove that he is not the father of the child." Under the provisions of *W.Va. Code*, 48–7–4 [1983], only an "unmarried woman with custody of her child, or any person who has physical or legal custody of such child, the guardian or committee of such child, or such child by his next friend, ..." or a married woman who is delivered of a child after having lived "separate and apart from her husband for a period of one year or more ..." and has not cohabited with such husband during that time, may institute a civil action for the establishment of paternity. Therefore, if the husband successfully rebuts the presumption of legitimacy in a divorce action by any permissible defense, the mother, under the provisions of *W.Va.Code*, 48–7–4 [1983], would be precluded from seeking support for the child from another person. This would, in effect, create a class of illegitimate children for which the fathers would not be financially responsible.[2]

■ This Court held in syllabus point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979):

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will

---

*Commonwealth v. Stappen*, 336 Mass. 174, 143 N.E.2d 221 (1957); *Berrisford v. Berrisford*, 322 N.W.2d 742 (Minn.1982); *Houghton v. Houghton*, 179 Neb. 275, 137 N.W.2d 861 (1965); *Watts v. Watts*, 115 N.H. 186, 337 A.2d 350 (1975); *Dawn B. v. Kevin D.*, 96 A.D.2d 922, 466 N.Y.S.2d 363 (1983); *Anonymous v. Anonymous*, 1 A.D.2d 312, 150 N.Y.S.2d 344 (1956). *See generally* 1 S. Schatkin, *Disputed Paternity Proceedings* §§ 10.01–10.03 (rev. 4th ed.1983); Page-Bright, *Proving Paternity—Human Leukocyte Antigen Test*, 27 J. For.Sci. 135 (1982); Polesky & Krause, *Blood Typing in Disputed Paternity Cases—Capabilities of American Laboratories*, 10 Fam.L.Q. 287 (1976); Reisner & Bolk, *A Layman's Guide to the Use of Blood Group Analysis in Paternity Testing*, 20 J.Fam.L. 657 (1982); Note, *Blood Test Evidence in Disputed Paternity Cases: Unjustified Adherence to the Exclusionary*

*Rule*, 59 Wash.U.L.Q. 977 (1981); Comment, *The Use of Blood Tests In Actions to Determine Paternity*, 16 Wake Forest L.Rev. 591 (1980); *Annot.*, 46 A.L.R.3d 158, § 32 (Cum.Supp.1983); 10 Am.Jur.2d *Bastards* § 32 (Cum.Supp.1983).

**2.** We further noted in *State ex rel. J.L.K. v. R.A.I.*, *supra*, 170 W.Va. at 346, 294 S.E.2d at 149 n. 13, that other legislatures have "found it desirable to allow a mother, once her husband has proven that he is not the father of her child, to accuse another ..." and we recommended such a change to our legislature. In 1983, the statute regarding paternity actions and the one at issue in *State ex rel. J.L.K. v. R.A.I.*, *supra*, *W.Va.Code*, 48–7–1 [1969], was replaced by *W.Va.Code*, 48–7–4 [1983], and extensively amended. However, such amendment did not address this problem. *See* 1983 W.Va. Acts ch. 60.

use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*See also Cardot v. Luff,* 164 W.Va. 307, 262 S.E.2d 889 (1980).

■ We have a limited record before us in this case. The petition for relief does not set forth the ground upon which the petitioner seeks a divorce from the respondent Oldaker nor does the record include any of the pleadings from the action below. In addition, the central issue of whether blood tests may be used to rebut the presumption of legitimacy is one of first impression for this Court. The record is silent as to the type of blood tests to be administered to the parties involved. Based upon our review of the matters before us, we cannot conclude that the circuit court committed any "clear-cut legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts...." All of the issues presented to us in this case are best resolved on appeal after proper development of the record. Under these circumstances, we decline to prohibit the use of blood tests to establish paternity in this case.

For the foregoing reasons, the writ of prohibition for which the petitioner prays is hereby denied.

Writ denied.