K.H.R., By and Through D.S.J., Next Friend, and A.J., Petitioners–Appellees,

and

D.R.R., Respondent–Appellee,

v.

R.L.S., Respondent–Appellant.

No. 89CA0519.

Colorado Court of Appeals, Div. C.

Oct. 11, 1990.

Rehearing Denied Nov. 8, 1990.

Certiorari Denied March 25, 1991.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Bonham, Peake & Hutchinson, Cheryl E. Peake, Denver, for petitioner-appellee A.J.

Law Firm of Sandra J. Pfaff, Frances C. Fontana, Denver, for respondent-appellee D.R.R.

Dixon and Snow, P.C., Steven Janiszewski, Denver, for respondent-appellant R.L.S.

Douglas S. Joffe, guardian ad litem.

Opinion by Judge HUME.

In this paternity action, R.L.S., one of two putative fathers, appeals from a partial summary judgment dismissing the action against D.R.R., the other putative father. We affirm.

The action brought by the mother, A.J., on behalf of the minor child, K.H.R., pursuant to the Uniform Parentage Act, § 19–4–101, et seq., C.R.S. (1990 Cum. Supp.), named R.L.S. as the presumed father under § 19–4–105(1)(f), C.R.S. (1990 Cum.Supp.). In accordance with that statute, the mother alleged that blood tests showed that R.L.S. was not excluded as the probable father of the child and that the probability of his paternity was greater than 97 percent.

An amended petition was subsequently filed by the child's guardian ad litem naming D.R.R. as an additional presumptive father pursuant to § 19–4–105(1)(d), C.R.S. (1990 Cum.Supp.). The amended petition alleged D.R.R. had received the child into his home and had held the child out as his natural child.

The mother sought, by means of a motion for summary judgment, a determination that D.R.R. was excluded by the blood test results from being the natural father of the child. The motion was supported by the mother's affidavit and by an affidavit of the director of the Belle Bonfils Memorial Blood Center. Both the motion and affidavits were based on the parties' blood test results. The trial court granted the motion for partial summary judgment and entered an order certifying its finality pursuant to C.R.C.P. 54(b).

I.

R.L.S. contends that the trial court erroneously relied on the affidavits in support of the motion for summary judgment. He argues that the affiants' statements regarding the results of the blood tests were inadmissible because the chain of custody of the blood specimens had not been established. We disagree.

Section 19–4–112, C.R.S. (1990 Cum. Supp.) of the Uniform Parentage Act provides for the administration of blood tests to determine biological parentage and directs that the test results be admitted into evidence as provided in § 13–25–126, C.R.S. (1987 Repl.Vol. 6A).

Under § 13–25–126, an alleged father who has been definitely excluded as a probable father of a child on the basis of blood grouping tests is entitled to have the blood test results admitted into evidence if a proper foundation is laid. *Franklin v. District Court*, 194 Colo. 189, 571 P.2d 1072 (1977); *Beck v. Beck*, 153 Colo. 90, 384 P.2d 731 (1963).

Section 13–25–126(1)(b), C.R.S. (1987 Repl.Vol. 6A) provides:

"The tests shall be conducted by a duly qualified physician or other duly qualified person, who shall be an expert witness. . . . If the results of the tests or the expert analysis of inherited characteristics are disputed by any party, the court, upon the reasonable request of such party, shall order that an additional test be made by the same or another laboratory at the expense of the party requesting the additional testing."

Thus, the statute expressly contemplates expert witness testimony regarding the analysis of inherited characteristics based on the blood test results.

■ Section 13–25–126(1)(c), C.R.S. (1987 Repl.Vol. 6A) provides:

"The chain of custody of blood or tissue specimens taken under this section *may* be established through verified documentation of the change of custody if such documentation was made at or near the time of the change of custody, if it was made in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the documentation." (emphasis added)

R.L.S. contends that these requirements are not permissive as the statutory language suggests, but rather are mandatory prerequisites for the admissibility of evidence of blood testing. We reject that contention.

The legislative history of § 13–25–126 demonstrates that the General Assembly considered whether subsection (1)(c) requirements were permissive or mandatory. *See* Hearings on H.B. 1344 before the House Health Committee, 54th General Assembly, First Regular Session, (March 9, 1983) (statements of Representatives Paulson and Pankey). That history demonstrates that the drafters of the statute intended subsection (1)(c) as a means to ease the burden of establishing the chain of custody of the specimens by allowing either verified documentation or direct testimony as a foundation for the admission of results of blood testing, and that the use of the word "may" in the statute was intended as a permissive alternative.

## II.

R.L.S. also contends that the trial court improperly relied on the affidavit of the blood center's director because it contained inadmissible hearsay. We disagree.

■ Summary judgment may only be granted when the moving party establishes, through the pleadings, depositions, transcripts, exhibits, and affidavits, both the evidentiary basis and the legal grounds for entry of judgment. C.R.C.P. 56; *Southard v. Miles*, 714 P.2d 891 (Colo. 1986); *D.S.P. v. R.L.K.*, 677 P.2d 959 (Colo. App.1983).

■ An affidavit in support of a motion for summary judgment must be premised upon the personal knowledge of the affiant, must set forth facts that would be admissible in evidence, and must show that the affiant is competent to testify to the matters contained in the affidavit. Also, it must contain evidentiary material which, if the affiant were in court, would be admissible as part of his testimony. *People v. Hernandez & Associates, Inc.*, 736 P.2d 1238 (Colo.App.1986).

■ The affidavit at issue here meets the requirement of C.R.C.P. 56(e) as described in *Hernandez*. It contains the affiant's qualifications as an expert in the field of blood type testing and sets forth his expert opinion as to the interpretation of the blood test results. This type of testimony was anticipated in the provisions of § 13–25–126(1)(b) and meets the guidelines for use of expert testimony pursuant to CRE 702.

In addition, CRE 703 permits expert testimony based on inadmissible hearsay if the data is "of a type reasonably relied on by experts in the particular field in forming opinions or inferences upon the subject." CRE 703 was adopted verbatim from Fed. R.Evid. 703, which was formulated "to broaden the basis for expert opinions," and to include information or data received by physicians from sources such as technicians' reports that are admissible as evidence, but require substantial time expenditure in producing and examining various authenticating witnesses. *See* Fed.R.Evid. 703 (Advisory Committee's Note). The blood test results reviewed by the affiant constituted a permissible basis for his expert opinion. *See Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

Thus, the pertinent statutes establish both the propriety of performing blood tests by duly qualified personnel to determine parentage, and the admissibility of those test results by expert testimony. Accordingly, here, the admission of the affidavit of the expert, whose qualifications were not challenged by R.L.S., was not an abuse of discretion. *See People v. District Court*, 647 P.2d 1206 (Colo.1982).

## III.

R.L.S. next contends that the only presumption of paternity that can be overcome by the results of blood tests taken pursuant to § 13–25–126 is the presumption of legitimacy of a child born during wedlock. Again, we disagree.

Section 13–25–126(1)(e)(V), C.R.S. (1987 Repl. Vol. 6A), which is made applicable to paternity proceedings by § 19–4–112, C.R.S. (1990 Cum.Supp.), provides that the presumption of legitimacy of a child born in wedlock can be rebutted by evidence based on blood test results, but it is silent as to whether the presumptions of paternity arising under § 19–4–105(1), C.R.S. (1990 Cum. Supp.) can be overcome by blood test results. However, § 19–4–105(2), C.R.S. (1990 Cum.Supp.) provides that the presumptions arising thereunder may be rebutted by clear and convincing evidence. *See R. McG. v. J.W.*, 200 Colo. 345, 615 P.2d 666 (Colo.1980).

Because these statutory provisions concern the same subject, they must be construed to give effect to both. *See Colorado Department of Social Services v. Board of County Commissioners*, 697 P.2d 1 (Colo.1985); *People in Interest of T.W.*, 797 P.2d 821 (Colo.App.1990); §§ 2–4–201(1)(b) and 2–4–205, C.R.S. (1980 Repl. Vol. 1B). Accordingly, we construe these statutes to permit the use of evidence of blood test results obtained pursuant to § 13–25–126, C.R.S. (1987 Repl.Vol. 6A) to overcome the presumptions of paternity arising under § 19–4–105, C.R.S. (1990 Cum.Supp.).

Consequently, the affidavit of the blood test expert was properly considered as competent evidence and was sufficient to establish that D.R.R. was not the natural father of K.H.R.

Judgment affirmed.

RULAND and ROTHENBERG, JJ., concur.